IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**WELLINGTON L. FARMER,**
        **Petitioner,**

**v.**                                                    **Case No. 5:08cv292/RS/MD**

**EDWIN BUSS,**
        **Respondent.**

_____

## THIRD REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 15) to which petitioner replied (doc. 20).  On December 30, 2009, the undersigned issued a Report and Recommendation (doc. 25) concluding petitioner's grounds for relief were procedurally defaulted, with the exception of those raised in Ground 1(B)B, Ground 2, and Ground 3.  In light of the Eleventh Circuit opinion *Hitchcock v. Secretary Department of Corrections,* 360 Fed. Appx. 82 (11th Cir. 2010), on January 12, 2010, the District Judge remanded the case to the undersigned for further consideration. The Report and Recommendation was vacated (doc. 27), and the parties provided supplemental briefing (docs. 28, 30).  On April 6, 2010, the court issued a second Report and Recommendation (doc. 31) finding that respondent's procedural default defense should be rejected in accordance with *Hitchcock*.  The District Judge adopted the Report and Recommendation on May 14, 2010 (doc. 32).  Respondent submitted an amended answer (doc. 36), and petitioner replied (doc. 39). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration

of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

The petitioner, Wellington Farmer, was charged in the Circuit Court of Gulf County, Florida, by Information with (1) aggravated battery on a law enforcement officer, (2) aggravated fleeing or attempting to elude a law enforcement officer, and (3) resisting a law enforcement officer with violence (doc. 15, ex. A).[1] [2]  After a jury trial, Mr. Farmer was adjudicated guilty as charged on all three counts, and sentenced as a prison releasee reoffender to thirty years imprisonment on the aggravated battery charge with lesser concurrent terms on the other two charges (ex. E).  A successful motion to correct illegal sentence modified the sentence by removing the prison releasee reoffender designation on one of the lesser offenses, a matter not relevant here (ex. G).  Mr. Farmer's direct appeal alleging fundamental error was unsuccessful.  *Farmer v. State*, 903 So.2d 192 (Fla. 1st DCA 2005) (Table) (copy at ex. K).  Mr. Farmer then filed a *pro se* motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, alleging ineffective assistance of trial counsel (ex. M).  An evidentiary hearing was held on all claims.  Mr. Farmer was represented at the hearing by appointed counsel and testified, as did his trial counsel (ex. P).  The Rule 3.850 court denied relief in a written decision  (ex. Q).  Mr. Farmer's appeal of that order was unsuccessful.  *Farmer v. State*, 983 So.2d 581 (Fla. 1st DCA 2008) (Table) (copy at ex. Q).  Mr. Farmer also filed a petition for writ of

---

[1]  Other counts, including attempted murder,  were either dropped or dismissed.

[2]  Hereafter all references to exhibits will be to doc. 15 unless otherwise noted.

habeas corpus in the appellate court alleging ineffective assistance of appellate counsel (ex. W).  The petition was summarily "denied on the merits."  *Farmer v. State*, 958 So.2d 4252 (Fla. 1st DCA 2007) (Table) (copy at ex. X).  Mr. Farmer then filed the instant petition for federal habeas corpus (doc. 1), which respondent concedes is timely (doc. 15, p. 5).


### STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254 provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  Section 2254(d)(2) must be divided into two separate inquiries:

---

[3]  Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).   The federal habeas court "determining whether [it] should overturn the state courts' [sic] rejection of the claim at issue" should "review the highest state court decision disposing of the claim." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1237 (11th Cir. 2011); *see Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Following the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when the Supreme Court's holding embodies the legal principle; dicta in opinions is not controlling.  *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).  Furthermore, a federal court of appeals decision, "even a holding directly on point," cannot clearly establish federal law for § 2254 purposes. *Bowles*, 608 F.3d at 1316 (citing *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1866 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is "contrary to" clearly established Supreme Court case law, either because the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or because it "confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different

result."  *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438, 161 L. Ed. 2d 334 (2005);  *see* § 2254(d)(1).  The state court does not need to cite to Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  § 2254(d)(1);  *Williams*, 529 U.S. at 412–13, 120 S. Ct. at 1523.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record the court had before it.  *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521; *see Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1400, 179 L. Ed. 2d 557 (Apr. 4, 2011) (holding new evidence introduced in federal habeas court has no bearing on § 2254(d)(1) review, rejecting dicta in *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam)); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  A state court's application of federal law is objectively unreasonable when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Brown*, 544 U.S. at 141, 125 S. Ct. at 1439.  However, a state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.  *Knowles*, 129 S. Ct. at 1419.  Notably, even a state court's incorrect application of law will not warrant federal habeas relief unless it is also objectively

unreasonable.  *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies the "objectively unreasonable" test to the state court's factual determination.  *Miller-El v. Cockrell*, 537 U.S. 322, 324, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).  The petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct.  *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see* § 2254(e)(1).

The Eleventh Circuit Court of Appeals in *Gill* clarified the federal habeas court's role in reviewing a state court's decision by squarely addressing the "unreasonable application of law" and the "unreasonable determination of facts" tests.  Mr. Gill's petition alleged he was denied his Sixth Amendment right to counsel.[4]  The Eleventh Circuit granted a limited Certificate of Appealability to determine the precise issue of the validity of "summary affirmance by a state appellate court of a trial court's decision based on potentially flawed reasoning."  *Id.* at 1286.[5]

---

[4] Mr. Gill twice moved the trial court in pretrial hearings to allow him to waive his Sixth Amendment right to counsel. *Gill*, 633 F.3d at 1275-1284; *see* U.S. Const. amend. VI.  The trial court denied the first motion, finding that Mr. Gill's waiver of counsel was not knowing and intelligent. *Gill*, 633 F.3d at 1278; *see Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, L. Ed. 2d 562 (1975) (accused must "knowingly and intelligently" waive representation).  It also denied the second motion, but it allowed Mr. Gill to act as co-counsel for himself only for determining trial strategy. *Gill*, 633 F.3d at 1284. He was convicted, and the Florida Second District Court of Appeals ("Second DCA") affirmed without opinion the trial court's denial of post-conviction relief. *Id.* at 1284-85.  Mr. Gill then filed a petition in federal district court, which petition the court denied with prejudice. *Id.* at 1284-85.

[5] The court reviewed Gill's claims that the federal habeas court erred in two respects.  First, Gill argued the habeas court erred by "failing to review on the merits the 'legally and factually unsupported rationale' articulated by the state trial court." 633 F.3d at 1288.  Second, Gill argued the habeas court's decision was *per se* erroneous because it "relied on a finding that the state court did not make." *Id.*

The court acknowledged the well-settled principle that summary affirmances, such as the Second DCA's, are presumed adjudicated on the merits and warrant deference. *Id.* at 1288 (citing *Harrington*, 131 S. Ct. at 784-85 and *Wright v. Moore*, 278 F.3d 1245, 1254 (11ᵗʰ Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id.* at 1291 (citing *Harrington*, 131 S. Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5ᵗʰ Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit court concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id* at 1291 (agreeing with the Fifth Circuit court in *Neal*, *supra*). In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*[6]

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id.* at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]"

---

Gill averred the trial court denied relief by finding that Gill's waiver was not knowing and intelligent, while the federal district court denied relief by finding that Gill "never clearly and unequivocally" waived his right to counsel. *Id.*

[6]  Applying this analysis, the court rejected Gill's claim that the district court erred by relying on different grounds than the trial court because Gill's basic premise—the Second DCA's summary affirmance relied on the trial court's statements from the bench—was not dispositive. *Id.* at 1288.

whether the state court's decision was objectively unreasonable. *Lockyer*, 538 U.S. at 64, 123 S. Ct. at 1168; *Gill*, 133 F.3d at 1290.

The Supreme Court recently summarized the meaning and function of habeas corpus in the federal system:

> Under §2254, a habeas court must determine what arguments or theories supported or . . . could have supported [ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of this Court.

*Harrington,* 131 S. Ct. at 786*.* Federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's conclusion." *Id.* at 786 (internal quotations omitted).

The federal habeas court will take the final step of conducting an independent review of the merits of the petitioner's claims only if it finds that the petitioner satisfied AEDPA and § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 2858-59, 168 L. Ed. 2d 662 (2007); *Jones v. Walker*, 496 F.3d 1216, 1228 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). When performing its review under § 2254(d), the federal court must resolve all claims for relief regardless of whether habeas relief is granted or denied. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (en banc); *see Puiatti v. McNeil*, 626 F.3d 1283, 1307 (11th Cir. 2010). The federal court must also bear in mind that state court factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002) (AEDPA provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting petitioner has heavier burden to overcome the presumption of factual correctness). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

## OTHER CONTROLLING LEGAL PRINCIPLES

**Ineffective assistance of counsel.**

Petitioner contends in some of his claims for relief in this court that he was denied his constitutional right to the effective assistance of counsel.    The Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To prevail on a claim of ineffective assistance of counsel, the petitioner must prove: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 677-678, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *see also Berghuis v. Thompkins,* __ U.S. __, 130 S. Ct. 2250, 2264-65, 176 L. Ed. 2d 1098 (2010).   Reasonableness of representation does not implicate what is possible, prudent, or even appropriate, but only what is "constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler*, 218 F.3d at 1314.  Courts must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also, e.g.*, *Chandler*, 218 F.3d at 1314 (the *Strickland* standard compels courts to "avoid second-guessing counsel's performance").  The Eleventh Circuit has summarized the standard and the burden:

> Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioner's to bear, is and is supposed to be a heavy one.  And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately."  *See White v. Singletary*, 972

F.2d 1218, 1221 (11th Cir. 1992). Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see also, e.g., Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (the test is not whether counsel could have done more); *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) (". . . the Constitution requires a good deal less than maximum performance.").

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S. Ct. at 2067; *see Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1305 (11th Cir. 2005). Petitioner must show a reasonable probability exists that the outcome would have been different. *Marquard*, 429 F.3d at 1305 (petitioner's burden under the prejudice prong is high); *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

The *Strickland* standard exists to prevent petitioners from abusing the post-trial process by escaping rules of waiver or presenting new issues; it should be "applied with scrupulous care" to protect the integrity of the adversary process. *Harrington*, 131 S. Ct. at 788. As it relates to habeas corpus applications, the Court emphasized:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations omitted); *Knowles*,129 S. Ct. at 1420 (2009) (*Strickland* claims evaluated under § 2254(d)(1) require "doubly deferential" judicial review).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This [inquiry] is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Jones v. Sec'y, Dep't of Corr.*, ___ F.3d ___, 2011 WL 2540573 (11th Cir. Jun. 28, 2011) (quoting *Harrington*, 131 S. Ct. at 785 (2011)). Habeas claims of ineffective assistance of counsel require "doubly deferential" judicial review under §2254(d) and *Strickland*, and petitioners only rarely prevail on this ground. *See Rogers*, 13 F.3d at 386.

### Exhaustion and Default

Respondent acknowledges the court's decision that *Hitchcock* is applicable but maintains the holding in *Hitchcock* is incorrect (doc. 36, p. 9). Respondent contends petitioner did not present at least one of his current claims to the state court for review and is defaulted from doing so now, and this court should not consider the claims. A petitioner defaults on an issue unless the petitioner first exhausts available state court remedies so the state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (per curiam); *see* 28 U.S.C. § 2254(b)(1)(A) (applicant must exhaust available state court remedies); § 2254(b)(3) (state may rely on exhaustion requirement unless it expressly waives the right). *But see* § 2254(b)(2) (application may be denied on the merits even when applicant fails to exhaust state remedies). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting

that court to the federal nature of the claim.  *Duncan*, 513 U.S. at 365-66, 115 S. Ct. at 888; *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999) (same).  This affords the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732.

"Fair presentation" requires that, in each claim for relief, the petitioner include a reference to a specific federal constitutional guarantee and a statement of the facts that entitle the petitioner to relief.  *Picard v. Connor*, 404 U.S. 270, 278, 92 S. Ct. 509, 513, 30 L. Ed. 2d 438 (1971).  To satisfy the exhaustion requirement, the petitioner must present the same facts and claims in state court about which he petitions the federal court.  *Id.*  Appeals to a broad, general constitutional guarantee also fail to present the "substance" of such a claim to the state court.  *See Anderson v. Harless*, 459 U.S. 4, 7, 103 S. Ct. 276, 278, 74 L. Ed. 2d 3 (1982) (petitioner cited federal authority only by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law" (internal quotation marks omitted)).  A state prisoner's claim is not fairly presented if the state court "must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material . . .."  *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  However, when a petitioner squarely raises a federal constitutional claim in state court, the "failure of a state court to mention a federal claim does not mean the claim was not presented to it."  *Dye v. Hofbauer*, 546 U.S. 1, 3, 126 S. Ct. 5, 6-7, 163 L. Ed. 2d 1 (2005).  And, simply labeling the claim "federal" may be sufficient to fairly present the claim.  *Baldwin*, 541 U.S. at 32, 124 S. Ct. at 1351 (dicta)*.*

The Eleventh Circuit requires specific reference to the United States Constitution and favors citations to federal cases.  *Zeigler v. Crosby*, 345 F.3d 1300, 1307-08 and n.5 (11th Cir. 2003) ("Cursory and conclusional sentences (unaccompanied by citations to federal law) . . . did not present to the Florida courts the federal claim asserted to us.").  This stricter standard requires the petitioner to

differentiate a claim under the United States Constitution from one under a state constitution. *Id.* at n.5; *McNair v. Campbell*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) ("a habeas applicant [must] do more than scatter some makeshift needles in the haystack of the state court record") (internal citations omitted)).  If state and federal constitutional law overlap in their applicability to the petitioner's claim, he must raise his issue in terms of the federal right in state court to obtain federal review of the issue. *Duncan*, 513 U.S. at 366, 115 S. Ct. at 888; *see also Anderson*, 459 U.S. at 7 and n.3, 103 S. Ct. at 278 and n.3 (petitioner's citation to a state-court decision predicated solely on state law is probably insufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited state case advanced a federal claim).

A claim is procedurally defaulted and barred from federal review in two instances: (1) if it was raised in state court and rejected on the independent and adequate state ground of procedural bar or default; or (2) if it was not properly raised in state court and can no longer be litigated under state procedural rules. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2557 and n.1, 115 L. Ed. 2d 640 (1991); *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *see also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (state court's rejection of petitioner's constitutional claim on state procedural grounds generally precludes subsequent federal habeas review of that claim).  Unless the federal court determines the state court "clearly and expressly" relied on independent and adequate state grounds, the federal court may address the petition.[7] *Coleman*, 501 U.S. at 735, 111 S. Ct. at 2557. However, when any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, the default is *per se* adequate state grounds independent of the federal question. *Id.* at 735 n.1, 2557 n.1; *Harris v. Reed*, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9, 103 L. Ed. 2d 308 (1989) (federal habeas court

---

[7] The "adequate and independent state grounds" rule applies equally to procedural and substantive state-law grounds. *Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).

need not require a federal claim be presented to a state court if the state court would hold the claim procedurally barred).

The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). To foreclose federal review, the state procedural bar must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857, 112 L. Ed. 2d 935 (1991). A state procedural bar is firmly established and regularly followed when the state has put litigants on notice of the rule, and the state has a legitimate interest in the rule's enforcement. *Maples v. Allen*, 586 F.3d 879, 888 (11th Cir. 2009) (citing Lee v. Kemna*, 534 U.S. at 385-88, 122 S. Ct. at 890-92)).

To overcome a procedural default so that the federal habeas court may reach the merits of a claim, the petitioner must show either "cause for the default and actual prejudice resulting therefrom," or a fundamental miscarriage of justice. *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004); *High v. Head*, 209 F.3d 1257, 1261 (11th Cir. 2000). Cause exists when an external impediment, such as governmental interference or the reasonable unavailability of the factual basis for the claim, prevented petitioner from raising the claim. *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991). To meet the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" because "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995). Further:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.* In short, actual innocence claims opening the gate for the miscarriage of justice exception are summarily rejected in virtually every case. *Id.*

Deference to state court findings of fact

Under the AEDPA, the state court does not have to explicitly state its findings of fact. *See Blankenship v. Hall*, 542 F.3d 1253, 1271-72 (11th Cir. 2008). State court findings of fact can be implied from the opinion and the record when they are necessary to the Rule 3.850 court's rejection of a petitioner's claim. *Id.* These implicit findings are entitled to deference. *Id.* As explained in the Standard of Review, *supra*, the state court is not required to cite or be aware of the relevant Supreme Court precedent as long as its conclusion is not contradictory. *Early*, 537 U.S. at 8, 123 S. Ct. at 365. A summary adjudication with a brief, or total lack of, statement of reasons is still an adjudication on the merits. *Harrington*, 131 S. Ct. at 780, 784; *see Childers v. Floyd*, 642 F.3d 953, 968 (11th Cir. 2011) ("an 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar.").

## PETITIONER'S GROUNDS FOR RELIEF

Mr. Farmer presents this court with three numbered grounds for relief with lettered claims and sub-claims. He presented the Ground One claims to the state court in a motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure (ex. M). He raised the Ground Two claims in his state petition for habeas corpus (ex. W). The Ground Three claims were included in Mr. Farmer's direct appeal of his judgment and sentence (ex F). Respondent maintains that all but one of the sub-claims of Ground One are procedurally defaulted, but concedes that the remaining claims (including Ground One (B)B, Ground Two and Ground Three) were properly exhausted in the state courts. For the reasons set forth in the court's Second Report and Recommendation, this court considers all claims properly exhausted (*see* docs. 31-32). Although the First DCA per curiam affirmed the Rule 3.850 court's decision, Mr. Farmer only appealed one sub-claim of Ground One (B),

discussed below (*see* exs. T, V). The First DCA did not review the other claims in Mr. Farmer's postconviction motion, so this court must rely on the Rule 3.850 court's decision in reviewing Mr. Farmer's other claims. *See Harvey*, 629 F.3d at 1237 (habeas court reviews decision of highest state court disposing of the claim).

## Ground One - Ineffective Assistance of Trial Counsel.

Respondent states that the Rule 3.850 court addressed each sub-claim on the merits by "[addressing] together all three 'failure to investigate' sub-claims presented under 'Point One' in the 3.850 motion." (Doc. 36, p. 16).[8] After careful consideration and with reservation, the undersigned accepts respondent's assertion as it applies to claims (A)A through (A)C. However, Mr. Farmer's postconviction motion Point Two, which is Ground One (B) of his habeas petition, included two sub-claims. The Rule 3.850 court clearly addressed only the claim raised in "Subpoint A" (*see* ex. B, pp. 16, 19; ex. Q, p. 79).[9] The history of judicial review in Mr. Farmer's case is significantly similar to the facts in *Williams v. Cavazos*, ___ F.3d___, 2011 WL 1945744 (9th Cir. May 23, 2011). In *Cavazos*, the state appellate court provided a reasoned explanation for denying the appellant's appeal, but the reasons did not address her Sixth Amendment claim "in any fashion, even indirectly." *Cavazos*, *supra*, at *8. According to *Richter*, a federal habeas court presumes the state court adjudicated the claim on the merits even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." 131

---

[8] The Rule 3.850 court does not cite to the record in concluding Mr. Farmer is not entitled to relief, but citation to the record is not required for a federal habeas court to conclude the state court addressed the claim on the merits. *Harrington*, 131 S. Ct. At 780, 784; *see Childers*, 642 F.3d at 968 ("an 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar.").

[9] These claims are raised in Mr. Farmer's habeas petition in Ground One, (B)A and (B)B. Although the motion for postconviction relief first states "Point Two" as "[c]onstitutionally ineffective assistance of counsel where defense counsel failed to move to dismiss defective charging information[,]" this one sentence description is followed by subsections labeled "Premise," "Subpoint A," "Facts in Support," "Argument," "Subpoint B," "Facts in Support," and "Argument." (Doc. 15, ex. K, pp. 15-23). The single sentence is an introduction, or umbrella argument, for the individual claims.

**S. Ct. at 784.  However, the Ninth Circuit Court held that under the rare set of facts before it,  the "*Richter* presumption" is overcome:**

> **In such cases, when it is clear that the "[state] courts did not reach the merits of [the petitioner's constitutional] claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings' "; "[i]nstead, the claim is reviewed de novo." *Cone v. Bell*, __ U.S. __, 129 S. Ct. 1769, 1784, 173 L. Ed. 2d 701 (2009) (quoting 28 U.S.C. § 2254(d)).**

**Id. at \*7 (citations and quotations in original).  The Court summarized, in part drawing on the justices' personal experience, that**

> **. . .when a court devotes many pages to explaining its reason for denying one claim, and then says absolutely nothing that even acknowledges the existence of a second claim, "there is reason to think" that it "is more likely" that the court simply neglected the issue and failed to adjudicate the claim.**

**Id. at \*8 n.11 (quotation marks in original).  The court reiterated the *Richter* Court's statement that failing to adjudicate constitutional challenges can happen "intentionally or inadvertently," but the reason for the failure does not abrogate the federal habeas court's duty to review the claim *de novo.  Id.* (citing *Richter*, 131 S. Ct. at 787).  The Eleventh Circuit has in no uncertain terms instructed habeas courts to "resolve all claims for relief raised in a petition for writ of habeas corpus pursuant to 28 U.S.C.§ 2254 . . ., regardless whether habeas relief is granted or denied." *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992).[10]**

---

**[10]  The court further explained the judicial economy of this method of review:**

> **A claim for relief for purposes of this instruction is any allegation of a constitutional violation.  Clisby's petition serves to illustrate this definition.  Claims one and two amount to separate claims for relief because an allegation of one constitutional violation and an allegation of another constitutional violation constitute two distinct claims for relief, even if both allegations arise from the same alleged set of operative facts.  Policy considerations clearly favor the contemporaneous consideration of allegations of constitutional violations grounded in the same factual basis:  a one-proceeding treatment of a petitioner's case enables a more thorough review of his claims, thus enhancing the quality of the judicial product.**

Like the state court in *Cavazos,* the Rule 3.850 court here clearly addressed and rejected one claim but failed to mention the other claim even indirectly(ex. Q, p. 79).  The Ninth Circuit Court's interpretation of *Richter* is helpful; the federal habeas court's role is to respect the state's prerogative to address constitutional claims first but provide a backup mechanism if they fail.  This method preserves  fundamental concepts of federalism, comity, and justice.

### (A)A   Failure to investigate reliability of the confidential informant.

Mr. Farmer contends his trail counsel, Mr. Dingus, was ineffective for failing to investigate the confidential informant, Mr. Harrell (doc. 1, p. 4B).  Mr. Farmer argues in his Rule 3.850 motion that if counsel had thoroughly investigated Mr. Harrell, the information would have shown Mr. Harrell was not a reliable witness (ex. M, p. 7).  He also points to trial witness' statements regarding Mr. Harrell's prior felony convictions, his probationary status, and that Major Nugent learned about Mr. Harrell's "tip" secondhand (ex. M, p.7).  At trial, Mr. Harrell testified he had been convicted of felonies eight to ten times and had been incarcerated three times (ex. B, p. 34.)  He was on probation at the time he volunteered to be a confidential informant (ex. B, pp. 34-35).  Mr. Harrell testified he agreed to meet Mr. Farmer at Mr. Harrell's house Friday, July 12, 2002, between five and seven o'clock in the evening, to buy narcotics from Mr. Farmer (ex. B, pp. 35-37).  He provided Gulf County Sheriff Frank Keithen with this information, and Sheriff Keithen arranged a stakeout (ex. B, pp. 36-37; ex. M, pp. 8-9).  Major Nugent testified he learned Mr. Harrell's tip from Mr. Keithen (ex. B, p. 55).  Mr. Farmer stresses that Mr. Nugent lacked direct knowledge that illegal activity was going to take place (ex. M, p. 8).  He further stated that Major Nugent testified he did not coordinate the details of the drug sale with Mr. Harrell (ex. M, p. 8; *see* ex. B, p.  73).

---

**960 F.2d at 936 (internal quotations omitted).**

Mr. Farmer concludes that if Mr. Harrell was not reliable, then Major Nugent did not have a legal right to detain Mr. Farmer (ex. M., p. 10).  Following this logic, his counsel would have prevailed on a motion to dismiss because the "instant case derived from an illegal stop and frisk." [11]  (Ex. M, p. 10).  Mr. Farmer avers his counsel's failure to move to dismiss on these grounds "prejudiced [him] insofar as the reliability of the outcome is called into question."  (Ex. M, p. 10).

<u>State Court Decision</u>

The Rule 3.850 court denied relief on this claim (ex. Q, p. 81).  The court clearly prefaced its opinion by reciting the standard for claims of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  It consolidated the three sub-claims within Point One (re-raised as habeas petition Ground One (A)) into one paragraph of analysis:

> Defendant's Ground One alleges trial counsel was ineffective because he did not adequately perform a pre-trial investigation of the case.  The Defendant states his counsel should have investigated and presented witnesses to show the lack of reliability of the informant, Terry Harrell, and move to dismiss the case under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).  Defendant's counsel testified that he successfully got defendant out of jail on bond for serious charges.  He had to encourage the defendant to make his office appointments in order to prepare for trial.  Defendant's counsel further testified that he did talk to all state witnesses and all the witnesses that defendant provided and that were found through discovery.  Witnesses that defendant wanted to testify

---

[11]  Mr. Farmer's claim is based on the rule set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 1968).  The Supreme Court stated in *Terry* that a person is entitled to the Fourth Amendment right to be free from unreasonable searches and seizures as he walked down the street. 392 U.S. at 8-9, 88 S. Ct. at 1873.  It held that while an arrest generally requires probable cause, an officer who reasonably believes a crime has been committed or is about to be committed can stop a person and conduct a limited search for weapons.  392 at 30, 88 S. Ct. at 1884-85.  The *Terry* progeny has held that a police officer may stop a suspect for general investigation, without probable cause to arrest, so long as he has articulable facts supporting a reasonable suspicion that the person has committed an offense.  *See, e.g., Illinois v. Wardlow*, 120 S. Ct. 673 (2000) (individual's location alone is not enough to support reasonable suspicion, but officers can take into account relevant characteristics of the location); *United States v. Cortez*, 101 S. Ct. 690 (1981) (police assessment must be based on all the circumstances and raise a suspicion that the individual stopped is engaged in wrongdoing); *United States v. Hensley*, 469 U.S. 221, 227-28, 105 S. Ct. 675, 679-680, 83 L. Ed. 2d 604 (1985) (extending investigatory stops to include those based on suspicion that the criminal has completed his crime and escaped the scene).

> would not help defendant or either they could not be found or did not exist.  Defendant wanted to find a Larry Jackson and an unidentified adult female who may have been at the scene.  It should further be noted that Larry Jackson was a friend of Terry Harrell.  Defendant did not want his counsel to call him at trial, contrary to defendant's statements that he wanted Larry Jackson to say bad things about the informant now.  Defendant's testimony does not appear to be very realistic.  Trial counsel obtained a mistrial and a new trial on his first jury trial based on Terry Harrell's testimony.  Defendant's trial counsel was not only competent but very successful for the defendant on this first ground and did a very thorough investigation.

(Ex. Q, p. 79).

Federal Review of State Court Decision

The undersigned finds that Mr. Dingus conducted an adequate pre-trial investigation, which was petitioner's "Point One".  Under the *Strickland* standard, the record supports the Rule 3.850 court's ultimate conclusion that Mr. Farmer's trial cousel acted within the scope of professional conduct.  Mr. Dingus testified at the evidentiary hearing on Mr. Farmer's motion for postconviction relief.  He learned through the discovery process that Mr. Harrell was going to be one of the State's witnesses (ex. P, p. 48).  Mr. Dingus represented Mr. Farmer in the first jury trial and was familiar with Mr. Harrell.  In commenting on Mr. Harrell's improper testimony about Mr. Farmer's criminal history elicited at the first trial, Mr. Dingus stated:

> That came up, I objected, we got a mistrial, so I was well aware of Mr. Harold's prior record and his proclivity for that type of stuff, if you will, at the time that we had the trial that he was ultimately convicted of.

(Ex. P, p. 48).  The Rule 3.850 court's conclusion that Mr. Dingus thoroughly investigated Mr. Harrell is supported by Mr. Dingus' investigation into the first trial, his observation of Mr. Harrell's testimony at the first trial, and the additional discovery in the second trial.

Mr. Farmer's organization and labeling in his Rule 3.850 motion is difficult to follow, but upon careful review, "Point One" is an umbrella argument and "Subpoint A" and "Subpoint B" are related claims.  The prior Report and Recommendations

support this interpretation (*see* docs. 24, 31).  In denying relief on Mr. Farmer's "Point One" claims, the Rule 3.850 court did not explicitly address the claim raised in "Subpoint A":  Mr. Dingus should have filed a motion to dismiss based on Mr. Harrell's unreliability as a confidential informant.  (*See* ex. M, p. 7).  But under the AEDPA, it does not have to.  *See Blankenship,* 542 F.3d at 1271-72.  Even if the Rule 3.850 court had failed to reference *Terry, supra* n.10, AEDPA deference still applies.  *Early*, 537 U.S. at 8, 123 S. Ct. at 365.

The undersigned finds sufficient support in the court's opinion and the record to conclude the Rule 3.850 court implicitly found that Mr. Dingus was not ineffective for failing to file a motion based on Mr. Harrell's reliability as a confidential informant, and the decision to reject Mr. Farmer's claim is not unreasonable.  First, the Rule 3.850 court stated: "The defendant states his counsel should have investigated and presented witnesses to show the lack of reliability of the informant, Terry Harrell, *and move to dismiss the case under* <u>*Terry v. Ohio,*</u> 392 U.S. 1 (1968)." (Ex.Q, p. 79) (emphasis added).  The record clearly contains findings that are necessary to the Rule 3.850 court's rejection of Mr. Farmer's claim.  The Rule 3.850 court held an evidentiary hearing on Mr. Farmer's motion on August 15, 2006 , during which Mr. Farmer's appellate counsel questioned Mr. Dingus regarding Mr. Dingus' failure to file a motion to dismiss (ex. P). The record states, in pertinent part:

> Q.    Mr. Dingus, did you believe in your pre-trial investigation in this case that Terry V Ohio and Florida Statute 901.151 would apply to the initial stop of Mr. Farmer in this case?
> A.    No.
> Q.    Could you tell the Court why didn't [sic] believe that would be appropriate?
> A.    There is some case law directly out of the First DCA, and I apologize I don't have the cite with me, but it, it affirms, in what I'm going to call a traffic law setting, that you can't resist with violence an illegal arrest meaning let's assume that the tension, the arrest, whatever deprivation of liberty law enforcement does to somebody, you can't use violence in resisting that.  You can non violently do that, but you can't do it with violence.

> **Q.** So would you have believed that a motion under Terry V Ohio line of case law in 901.151 would have been appropriate in the event there wouldn't have been any violence involved in the initial detention and forward from there?
>
> **A.** Correct. And I believe we asked for a lesser included of the resisting charges, resisting without, and we made that argument to the Jury.
>
> Additionally, if we had grounds to make that argument, I mean, there was no drugs discovered, there was no physical evidence obtained as a result of a search or seizure in this aspect, so if, there wasn't really anything to suppress.

(Ex. P, pp. 57-58). Two witnesses testified at the evidentiary hearing: Mr. Farmer and Mr. Dingus (ex. P). The Rule 3.850 court heard Mr. Farmer's testimony about Mr. Dingus' alleged ineffective assistance, and it heard Mr. Dingus' testimony in response to these allegations. The court's rejection of Mr. Farmer's claim is implicitly based on its determination that Mr. Dingus' testimony was more credible than Mr. Farmer's. A federal habeas court cannot redetermine witness credibility when the state trial court has observed the witnesses' demeanor and the federal habeas court has not. *Marshall v. Lonberger*, 459 U.S. 422, 434-36, 103 S. Ct. 843, 851-52, 74 L. Ed. 2d 646 (1983). The Rule 3.850 court's application of *Strickland* to Mr. Farmer's counsel's actions regarding investigating Mr. Harrell is not unreasonable, and Mr. Farmer is not entitled to habeas relief on this claim.

Even if this court construes the Rule 3.850 court's lack of explanation of Mr. Farmer's sub-claim when compared to its findings regarding the other sub-claims as a failure to address the claim on the merits, Mr. Farmer's contention that Mr. Dingus' failure to file a motion to dismiss based on *Terry* prejudiced him because the outcome of the trial is "called into question" (ex. M, p. 10) is still without merit.[12] In Mr. Farmer's case, the officers derived their facts from a confidential informant. The

---

[12] The State correctly notes in its answer that the Mr. Farmer "confuses the purpose of a motion to dismiss with a motion to suppress evidence." (Doc. 36, p. 10). However, the essence of Mr. Farmer's claim is that had Mr. Dingus investigated Mr. Harrell, he would have learned Officer Nugent's stop was illegal and could have made *a motion* that would have had a reasonable probability of changing the outcome of the trial. Mr. Farmer's misstatement is immaterial.

court weighs the totality of the circumstances in reviewing whether police had probable cause to effect a warrantless arrest.  The informant's veracity (credibility and reliability), the amount of details he supplies, and the officer's corroboration of those details are "highly relevant" to the analysis.  *Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 2328, 76 L. Ed. 2d 527 (1983).

Two cases illustrate the totality of the circumstances rule.  First, in *Lawal v. State of Florida*, 666 So.2d 1000 (Fla. 2nd DCA 1996), the defendant was charged with possession and delivery of marijuana.  666 So.2d at 1000.  He appealed his conviction, arguing the court erred in denying his motion to suppress evidence seized during a search of his vehicle.  *Id.* at 1000-1001.  Officers had never used the informant before, and he was an arrestee cooperating for his benefit.  *Id.*  The tip was not detailed; the police only heard the informant's side of a vague conversation with the defendant, and the informant's tip lacked specificity about defendant's appearance or vehicle.  *Id.* at 1001.  At the scene, the police had a "totally innocuous" conversation with the defendant that did not corroborate the informant's tip.[13]  *Id.*  Based on these facts, the court held the totality of the circumstances did not suggest probable cause to arrest the defendant, and the trial court should have granted the motion to suppress.  *Id.*

In contrast, in *State of Florida v. Butler*, 655 So.2d 1123 (Fla. 1995), the Florida Supreme Court upheld the defendant's conviction for possession of cocaine over his claim that his arrest was illegal because the officers lacked probable cause.  655 So.2d at 1131.  The arresting officer had used the informant over twenty times, with a 60% to 70% arrest rate.  *Id.*  Furthermore, although the informant's tip may have lacked personal knowledge, it specified the defendant's height, clothing, type of drugs, location of the drugs sold, and the method of delivery.  *Id.*  The officers went

---

[13]  After the officer waited thirty minutes at the site, a vehicle pulled up next to him.  *Id.*  The officer rolled down his window, and the defendant  asked "What's up?"  The officer replied that his companion was inside and would return shortly.  The defendant said "Okay."  Without further conversation, backup units arrived and the officers arrested the defendant.  *Id.*

to the location and viewed the defendant, at which time they observed the exact details in the informant's tip.  *Id.* at 1125.  Although they did not witness any criminal activity, or any indication that the defendant was about to engage in criminal activity, they stopped him, patted him down, and found cocaine.  *Id.*  The court found that under the totality of the circumstances, the court did not err in determining the officer had "sufficient knowledge to conclude that there was a probability of criminal activity on the part of [the defendant]."  *Id.* at 1131.  It noted that under *Gates*, *supra*, "seemingly innocent activity" can be used to corroborate a tip.  *Id.*; *see Gates*, 462 U.S. at 244 n.13, 103 S. Ct. At 2335 n.13.[14]

The facts in the instant case lie somewhere between *Lawal* and *Butler*.  Mr Harvell testified Mr. farmer approached him to sell crack cocaine because Mr. Harvell's house was for sale and "the deal" was almost closed (ex. B, p. 35).  They agreed to meet at Mr. Harvell's house that Friday between 5:00 p.m. and 7:00 p.m. to complete the transaction (*id.*).  Mr. Harvell discussed this information with the Gulf County, Florida Sheriff (*id.*).  The arresting officer, Major Nugent, had known Mr. Farmer for approximately twenty years, had conversed with him on multiple occasions, and considered each other to be on a "first name basis"(*id.* at 55).  Major Nugent testified he acted on the Sheriff's orders and proceeded to Mr. Harrell's house at the specified time (ex. B, p. 55).  He did not coordinate with Mr. Harrell (*id.* at 73).  He left the scene but returned when he saw Mr. Farmer's blue Cadillac, which he recognized from previous encounters with Mr. Farmer (*id.* at 56).  When Mr. Farmer saw Mr. Nugent, he ran, despite Mr. Nugent's command not to run (*id.* at 59-60).  Mr. Nugent looked for but never saw Mr. Farmer throw a bag or other item, and drugs were never found in Mr. Farmer's car (*id.* at pp. 60, 75).

---

[14]  The court also stated that insignificant information can bolster a probably cause determination. *Id.* at 1131.  In that case, the defendant was in a "high drug area" where the officer had recently seized cocaine.  *Id.*  Furthermore, when the officer arrived, he observed the defendant "turn and attempt to walk up a set of stairs."

As an initial matter, the undersigned does not believe that Mr. Dingus' professional opinion that Mr. Harrell satisfied the test as a reliable informant—leading to a reasonable suspicion justifying the police stakeout—fell below an objective standard of reasonableness.  Mr. Harell stood nothing to gain from reporting the criminal activity in which he believed Mr. Farmer was to engage.  Where an informant is not motivated by pecuniary gain, but by the desire to further justice, he is a "citizen-informant", and his information "is at the high end of the tip-reliability scale."  *State of Florida v. Maynard*, 783 So.2d 226, 230 (Fla. 2001).  Indeed, Justice Harlan stated in 1971:

> I think there is much truth in the Government's supporting assertion that the ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis.  The latter is likely to be someone who is himself involved in criminal activity or is, at least, someone who enjoys the confidence of criminals.

*United States v. Harris*, 403 U.S. 573, 599, 91 S. Ct. 2075, 2090 (1971) (Harlan, J., dissenting) (internal quotations omitted).[15]  Also, Mr. Farmer's assertion that Major Nugent illegally stopped Mr. Farmer because he did not have direct knowledge of the tip is erroneous under Florida law.  *See State of Florida v. Maynard*, 783 So.2d 226, 229 (Fla. 2001) (". . . under the 'fellow officer rule,' the information possessed by one officer in the chain of an investigation . . . is imputed to the other officers for the purposes of assessing whether an investigatory stop is justified.").

Moreover, Mr. Dingus testified that he was aware of Florida case law that stated that a person is not entitled to use violence to resist an arrest, even if the

---

[15]  However, Justice Harlan also notes that the magistrate judge issuing a warrant in this case was unaware that the informant, in the past, frequently purchased drugs from the respondent.  403 U.S. at 599 n.5, 91 S. Ct. at 2089 n.5.  In the context of issuing a search warrant, Justice Harlan disagreed that the informant's affidavit contained "anything that enabled the magistrate to judge for himself of the credibility of the informant."  403 U.S. at 600, 91 S. Ct. at 601.  While the undersigned acknowledges this factual similarity in that Mr. Harrell was on probation and enjoyed "criminal confidences", the Court in *Harris* was reviewing the sufficiency of evidence supporting probable cause, which requires a higher showing than reasonable suspicion.

arrest is illegal.  In fact, Florida has an established body of case law supporting this proposition.  *See, e.g., State of Florida v. Johnson*, 382 So.2d 866, 867 (Fla. 2nd DCA 1980) ("the use of force in resisting an arrest by a person reasonably known to be a law enforcement officer is unlawful notwithstanding the technical illegality of the arrest") (internal quotations omitted); *Kaiser v. State of Florida*, 328 So.2d 570, 571 (Fla. 3rd DCA 1976) (motion for directed verdict was properly denied where officer had right to temporarily detain but not arrest defendant, defendant could not turn his back on, or walk away from, or engage in physical combat with, the officer).  In *Meeks v. State of Florida*, 369 So.2d 109 (Fla. 1st DCA 1979) the defendant appealed a conviction of battery on a law enforcement officer, alleging the arrest was illegal. 360 So.2d at 110.  The court held the trial court properly denied the defendant's motion to dismiss, stating that "just as the appellant is not justified in using force to resist an unlawful arrest pursuant to Sections 843.01 and 776.051(1), Florida Statutes (1977), neither is he justified in committing a battery to resist an unlawful arrest pursuant to Section 784.07, Florida Statutes (1977)."  *Id.* at 110.  While "knowledge of the officer's status is an essential element" of crime of resisting arrest with violence, *Polite v. State of Florida*, 973 So. 2d 1107, 1117 (Fla. 2007), the record demonstrates that Major Nugent and Mr. Farmer had numerous contacts, and Mr. Farmer reacted adversely when he saw Major Nugent (ex. B., p. 54, 59).  A reasonable attorney would form his trial strategy around the assumption that a jury would find that Mr. Farmer knew Major Nugent was an officer.  Mr. Dingus' failure to file a motion based on Mr. Harrell's status as an informant was not outside the permissible scope of action for counsel under *Strickland*, and Mr. Farmer is not entitled to habeas relief on this claim.

> (A)B   Failure to discover identity of the woman at Mr. Harrell's house.

Mr. Farmer alleges his counsel was ineffective for failing to identify and investigate a woman who was present at the time Major Nugent approached Mr.

Farmer in front of Mr. Harrell's house (doc. 1, pp. 4C-4D; doc. 15, ex. M, pp. 10-12).[16] He states the woman could have testified that the officers did not witness illegal activity, supporting Mr. Farmer's argument in Subpoint A that Mr. Dingus should have filed a motion to dismiss the case (ex. M, pp. 10, 12).  He also states her testimony would have bolstered his self-defense claim at trial through eye-witness testimony regarding Major Nugent's actions (ex. M, p. 10).  He concludes the trial outcome would have been different if counsel had investigated the woman because he would have succeeded in a motion to dismiss, or alternatively, on his theory of self-defense (ex. M, p. 12).

        State Court Decision

        The Rule 3.850 court evaluated Mr. Dingus' testimony at the evidentiary hearing (ex. P) and concluded Mr. Dingus conducted a "very thorough investigation" (ex. Q, p. 79).  The opinion noted that "[w]itnesses that defendant wanted to testify would not help defendant or either they could not be found or did not exist."  (Ex. Q, p. 79).  The court found Mr. Dingus' testimony that he spoke with the witnesses Mr. Farmer provided and the witnesses found through discovery credible (ex. Q, p. 79).  Based on Mr. Dingus' testimony, the court denied Mr. Farmer's claim for ineffective assistance of counsel for failing to conduct pre-trial investigation of an unidentified woman present in front of Mr. Harrell's house (ex. Q, p. 79).

        Federal Review of State Court Decision

        As previously stated, the Rule 3.850 court identified and applied the *Strickland* standard for showing ineffective assistance of counsel.  In reviewing Mr. Farmer's claim, the court applied the first prong of *Strickland* and found Mr. Farmer's counsel acted within the broad scope of professional conduct by speaking with the witnesses identified by Mr. Farmer and through discovery.  At the evidentiary

---

[16] Mr. Farmer concedes he cannot claim ineffective assistance of counsel based on failure to call a witness because he cannot state the witness' name and that she was available for trial (ex. M, pg. 10).

hearing, Mr. Farmer's appellate attorney questioned Mr. Dingus regarding his investigation of witnesses and the unidentified woman:

> Q.     And during the course of your investigation early on, were you made known to the fact that there was, at least, one adult female at the scene in close to the time, time period that Officer Nugent arrived on scene?
>
> A.     I can't recall if Mr. Nugent, excuse me, if Mr. Farmer said anything about that.  I do recall asking him on numerous occasions to tell me who all it was that he wanted me to locate in subpoenas as witnesses and the names that I had at the time of his first trial were Kiki Williams, Terry Harold [sic] and Gene Hill.
>
> Q.     And did you speak with those individuals?
>
> A.     I did.
>
> Q.     And did you find that none of those individuals would have been an adult female at the scene close in time to the arrival of Nugent?
>
> A.     Well, Kiki Williams And [sic] Gene Hill both were witnesses, but they did not, they were not the witness you're describing.
>
> Q.     Did the State's discovery identify any other individuals at the scene other than those that you were able to discover in the process?
>
> A.     It did not.  And in fact, I recall asking at least one of the law enforcement officers in depositions if they had a name of this person. I think it was Mr. Nugent when we deposed him and he did not.  And in talking with Mr. Farmer, I can't recall if we discussed that particular individual in any sort of detail, but I can tell you we, we talked about, you know, give me the names and addresses of folks you want brought to trial to testify on your behalf, and the ones that I told you about earlier were the ones that he told me about.  In addition, the correctional officer that we called to testify.  He was brought to my attention, I want to say after the first mistrial, and we got a subpoena on him and he did show up and testify.
>
> Q.     Do you recall having a conversation with Mr. Farmer where he indicated that two unknown white females were at the scene, but he didn't know who they were?
>
> A.     No.

(Ex. P, pp. 58-59).  Mr. Dingus' testimony supports the Rule 3.850's conclusion that he conducted a thorough pre-trial investigation of possible witnesses, and his decision not to further investigate the identity of a woman who had questionable

probative value to his case was reasonable.  "An attorney can avoid activities that appear distractive from more important duties.  Counsel [is] entitled to formulate a strategy that [is] reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."  *Richter*, 131 S. Ct. at 789 (internal quotation marks and citations omitted ).  The Rule 3.850 court concluded Mr. Farmer's counsel used reasonable professional judgment in conducting his investigation.  *See Blankenship*,  542 F.3d at 1273.

The Rule 3.850 court's decision is not contrary to federal law, and it reasonably applied the law to the facts in light of the evidence presented.  Mr. Farmer is not entitled to habeas relief on this claim.

### (A)C   Failure to call Larry Jackson as a witness.

Mr. Farmer alleges his counsel was ineffective for failing to call Larry Jackson as a witness at trial (ex. P, p. 13).  He states that Mr. Jackson was willing and available to testify that Mr. Farmer had "likely gone to Harrell's house the day of the incidents culminating in the case at bar to procure a bicycle as previously arranged." (Ex. P, p. 13).  He asserts that this testimony would have impeached Mr. Harrell's testimony and undermined the State's basis for probable cause to "detain/arrest" Mr. Farmer (*id.*).  Mr. Farmer surmises the outcome of the trial would have been different if Mr. Jackson had testified because his testimony would have "eliminated" essential elements of the crimes of which Mr. Farmer was convicted, specifically:

> the "lawful duty" element of Aggravated Battery on a law enforcement officer; the "duly authorized law enforcement officer," ordered Defendant to stop element of aggravated Fleeing to Elude a law enforcement officer; the "execution of a lawful duty" element of Resisting an officer with violence.

(Ex. P, p. 15).

### State Court Decision

The Rule 3.850 court denied Mr. Farmer's claim that his counsel was ineffective for failing to call Mr. Jackson as a witness (ex. Q, p. 79).  The court's explanation states in its entirety:

> Defendant wanted to find a Larry Jackson . . ..  It should further be noted that Larry Jackson was a friend of Terry Harrell.  Defendant did not want his counsel to call him at trial, contrary to defendant's statements that he wanted Larry Jackson to say bad things about the informant now.  Defendant's testimony does not appear to be very realistic.

(Ex. Q, p. 79).

### Federal Review of State Court Decision

The Rule 3.850 court clearly makes a credibility determination in stating, "Defendant's testimony does not appear to be very realistic." (Ex. Q, p. 79).  It is true that this court presumes the state court's determinations regarding credibility are correct.  *Baldwin v. Johnson*, 152 F.3d 1304, 1317 (11th Cir. 1998).  And as previously noted, a federal habeas court cannot redetermine witness credibility when the state trial court has the benefit of observing the witnesses first-hand.  *Marshall*, 459 U.S. at 434-36, 103 S. Ct. at 851-52.  At the same time, this court must keep in its sight the overarching question of whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence in the record.  28 U.S.C. 2254(d); *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521.

The Rule 3.850 court supports its decision with two conclusions: Larry Jackson and Terry Harrell were friends; and Mr. Farmer did not want his counsel to call Larry Jackson as a witness at trial.  First, the court notes that Larry Jackson and Terry Harrell were friends (ex. Q, p. 79).  Mr. Farmer testified at the evidentiary hearing that while he had known Mr. Jackson his whole life, Mr. Harrell "knew him better" than Mr. Farmer (ex. P, p. 14).  The court could reasonably conclude from this

testimony that Mr. Jackson and Mr. Harrell were friends.  Although no court can divine counsel's motive for choosing not to call Mr. Jackson, a reasonable attorney may find that Mr. Jackson's relationship with Mr. Harrell made his testimony a greater liability than an asset to his case.[17]  Furthermore, Mr. Farmer concedes that Mr. Jackson was not present during the detention and arrest.  Therefore, Mr. Farmer's counsel could only call Mr. Jackson to testify: 1) about Mr. Farmer's character; 2) to impeach Mr. Harrell's character; 3) to offer a speculative alternative version of events.  Each of these scenarios present problems for Mr. Dingus' theory of the case.  The Rule 3.850 court makes particular mention of Mr. Dingus' seventeen years of experience and trial competence (ex. Q, p. 81).  While the undersigned does not agree that because an attorney is experienced he is immune from a finding of ineffectiveness, the record supports the court's ultimate conclusion that Mr. Dingus contemplated the pros and cons of different strategies throughout the trial and made a decision, in his professional judgment, that Mr. Jackson's relationship with Mr. Harrell was problematic (*see, e.g.*, ex. P, p. 47, ll. 2-6; p. 48; p. 50, ll. 3-23; p. 51-52).

Second, the Rule 3.850 court states that Mr. Farmer did not want Mr. Dingus to call him at trial.  At the evidentiary hearing, Mr. Farmer testified that he mentioned Mr. Jackson's name (ex. P, p. 15).  Mr. Farmer's counsel inquired further:

> Q.      All right.  And did you give Mr. Dingus any indication where he might be able to find Mr. Jackson?
> A.      No, sir, but he never asked me whether or not I wanted him to testify.  This thing was pretty much left up to Mr. Dingus in the driver's seat.
> Q.      Did you indicate to Mr. Dingus you wanted Mr. Jackson called as a witness on your behalf?
> A.      If we needed him to testify, I knew he would have.  The question was --
> Q.      My question though is, did you indicate to Mr. Dingus that you wanted Mr. Jackson to testify?

---

[17] Mr. Dingus was asked if "[a]t any point in time during the discussions, was the name Larry Jackson discussed," to which Mr. Dingus responded, "No, it was not."  (Ex. P, p. 47).  It is possible Mr. Dingus did not even know who Larry Jackson was.

> **A.** I didn't tell him to, but I told him Larry Jackson knew that we had purchased a bike, that decision was left up to him.

(Ex. P, pp. 15-16). In direct contradiction, at the same hearing Mr. Dingus was asked if "[a]t any point in time during the discussions, was the name Larry Jackson discussed," to which Mr. Dingus responded, "No, it was not." (Ex. P, p. 47). At trial, before the defense rested, the court asked Mr. Farmer if "there are other witnesses [he] would have Mr. Dingus call on your behalf that he has not called[,]" to which Mr. Farmer responded in the negative (ex. B, p. 184). The court further asked if there was "anything at this stage that [he wished] Mr. Dingus to do that he [had] not done[,]" to which Mr. Farmer also responded in the negative (ex. B, pp. 184-85). Several questions later, the court asked a second time if Mr. Farmer wanted Mr. Dingus to call any other witnesses or put on other evidence, and Mr. Farmer responded that he did not (ex. B, p. 185). Based on the record, the state court's ruling was not based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2); *Williams, supra*. Mr. Farmer is not entitled to federal habeas relief on this claim.

### (B)A   Failure to move to dismiss the Information for the aggravated battery count for not containing the required allegation of intent.[18]

Count II of the charging document alleged Mr. Farmer "did intentionally touch or strike Joe Nugent . . . and in committing said battery did use a motor vehicle, a deadly weapon, contrary to Florida Statutes 784.045(1)(a)(2) and 784.07(2)(d)." (Ex. A). Mr. Farmer argues that the charging document only alleged intentional touching and striking, not the alternative element of intentional bodily harm to another person. He states that despite the document's language, the trial court judge told Mr. Dingus

---

[18] Mr. Farmer uses the phrase "move to dismiss" in the heading of his habeas petition, but both his motion for postconviction relief and the body of his habeas petition argue that counsel failed to *object*, not dismiss. Respondent's answer also focuses on the objection argument, not dismissal. The court interprets pro se pleadings liberally and proceeds on the substance of Mr. Farmer's argument, not the heading. However, it should be noted that had Mr. Farmer argued his counsel was ineffective for failing to move to dismiss the information, the claim would fail under Rule 3.140(o), Florida Rules of Criminal Procedure.

and the State outside the presence of the jury that he would introduce the charges, and he proceeded to recite the both alternative elements of aggravated battery. (Ex. M, p. 15; ex. B, p. 187).  The trial court judge actually instructed the jury on both alternatives (ex. M, p. 16; ex. B, pp. 254-55)  Mr. Farmer's counsel did not object to the instruction as given, although he did move for judgment of acquittal at the close of the State's evidence on other grounds (ex. M, p. 16-17)  Mr. Farmer states that the judge's erroneous instruction in combination with the jury's "general verdict" finding Mr. Farmer guilty as charged impugns the reliability of the verdict because the jury could have found Mr. Farmer guilty on an uncharged and unproven element (ex. M, pp. 18-19)  Mr. Farmer goes on to state that in addition to Mr. Dingus' failure to make a contemporaneous objection or include the objection in his argument for judgment of acquittal, he also failed to make a renewed motion for judgment of acquittal based on Mr. Farmer's argument, as set forth in Rule 3.380(a), Florida Rules of Criminal Procedure.

Mr. Farmer concludes Mr. Dingus' multiple failures to object prejudiced him because: 1) the expanded instruction lowered the State's burden of proof; 2) Mr. Farmer was precluded from appellate review on the issue and appellate review would have resulted in reversal; and 3) the general verdict calls into question the reliability of the proceedings (ex. M, p. 19).

<u>State Court Decision</u>

The Rule 3.850 court identified Mr. Farmer's argument that his trial counsel should have objected to the jury instruction (ex. Q, p. 79).  But the court found that "the evidence presented at trial was more than sufficient to allow the jury instruction on this charge to be read.  Trial counsel had no reason to object because the evidence presented was consistent with the jury instruction read." (Ex. Q, p. 79).[19]

---

[19]  The remainder of the Rule 3.850 court's analysis of this issue is irrelevant.  That trial counsel successfully moved for judgment of acquittal on the most serious count charged has nothing to do with his effectiveness regarding this count.  Furthermore, the undersigned presumes Mr. Farmer would disagree that Mr. Dingus "received much success for the defendant as it relates to the charging document" when he is contending Mr. Dingus was constitutionally ineffective.  (Ex. Q, p. 79).

The court concluded that even if Mr. Farmer's counsel erred in not objecting, Mr. Farmer could not show that the proceedings would have been different or that he was fundamentally prejudiced (ex. Q, p. 79).

### Federal Review of State Court Decision

The Rule 3.850 court made a factual finding that the evidence adduced at trial made the jury instruction appropriate, so Mr. Dingus had no reason to object. It also found Mr. Farmer did not show that the proceedings would be different or that he was fundamentally prejudiced. This court must give deference to a state court's adjudication of a claim on the merits unless the decision is objectively unreasonable. The undersigned finds Mr. Farmer has not shown the decision is objectively unreasonable. However, in light of the nature of Mr. Farmer's prejudice prong claims, it is appropriate to expand upon the record support for the court's ultimate conclusion.

Mr. Farmer testified at the evidentiary hearing about this claim and explained that the court should not have instructed the jury on the alternate element of causing bodily harm, and if Mr. Dingus had objected, the result of the trial could have been different because the State's charge did not comport with the jury's verdict (ex. P, pp. 16-18). Mr. Farmer's post-conviction motion better articulates his grounds for showing prejudice: 1) the State's burden of proof was reduced; 2) if the issue had been preserved for appellate review, the appellate court would have found fundamental error and vacated the judgment; 3) the reliability of the proceedings were called into question because the jury verdict did not make clear that it found Mr. Farmer committed the underlying battery by intentionally touching or striking Mr. Nugent (as charged), as opposed to causing great bodily harm (uncharged) (ex. P, pp. 18-19). Items one and three challenge the outcome at the trial court level, while item two challenges the appellate stage.

The Supreme Court clearly established that a petitioner challenging trial counsel's actions must establish that, absent counselor's errors, the outcome would

have been different.  *See Strickland, supra.*  However, it has not clearly established whether a federal habeas court should address prejudice to a petitioner on appeal as well as at trial.  *See Carratelli v. Stepp*, 382 Fed. Appx. 829, 832 (11th Cir. June 11. 2010).  Because there is no clearly established federal law, to the extent the Rule 3.850 court contemplated what effect Mr. Dingus' actions had on appeal, its decision is not "contrary to" federal law.

This does not relieve the federal habeas court of determining whether the state court reasonably determined the facts in light of the record evidence. § 2254(d)(2).  The Eleventh Circuit directs federal habeas courts to focus the prejudice inquiry of an ineffective assistance of counsel claim differently depending upon the basis for the claim.  *Id.* at 830-833  (discussing *Davis v. Sec'y for Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003);  *Purvis v. Crosby*, 451 F.3d 734, 739-40 (11th Cir. 2006); *Jackson v. Herring*, 42 F.3d 1350 (11th Cir. 1995)).  If the petitioner claims his counsel was ineffective for failing to preserve issue for appeal (*i.e.* by failing to object) the habeas court focuses on whether the petitioner established the error prejudiced the outcome of trial.  On the other hand, if the petitioner claims his counsel recognized and raised an issue before the trial court and then neglected to take some step that is relevant only to the appellate stage (*e.g.* failing to strike a juror), then the court's inquiry focuses on whether the petitioner established the error prejudiced the outcome of appeal.  *Id.*

The State's counsel did not directly ask Mr. Dingus about the aggravated battery charge or the jury instruction at the evidentiary hearing.  However, in discussing another claim, Mr. Dingus testified that he was under the impression that the State amended its information regarding the aggravated battery charge.  He stated in pertinent part:

> When we reconvened and we had, when I saw we, me and Mr. Meadows had talked some out in the hallway, I want to say he told me they were retooling their information on the agg battery count because there was some discussion during the JOA motion we had about whether or not they could just, whether the agg battery could, in fact,

swallow the attempted murder count.  And we objected to that based on double jeopardy and degrees of crime and whatnot, that's all on the record.  But it was my impression that that was what the State was trying to do, and they amended their information accordingly.. . .
. . .

In this case, the witnesses we had were, what I'm going to call fact witnesses, they recounted some facts of Mr. Farmer driving the vehicle that Mr. Nugent was on, going down 1st Street, making the corner there at McDonald's and Nugent getting thrown off and injured in the process of being thrown off.  There was some testimony that he was not run over by the car that was in dispute as to whether or not Mr. Farmer ran over his leg or not, but Mr. Nugent had testified that he was injured in the process of falling off the vehicle.  And in any event, brought all that into context of the motion for the Judgment of Acquittal we made at the conclusion of the State's case, and we renewed that at the end of the defense witnesses.

**(Ex. P, pp. 54-55).**

Mr. Farmer's counsel specifically asked Mr. Dingus about Mr. Farmer's claim on cross-examination:

Q.      Now, in regard to the information and the omission of the second prong of, or intentionally caused bodily harm to Joe Nugent, can you tell the Court why you didn't file a Motion to Dismiss that part of the information as being improperly charged?
A.      Well, quite frankly, as I said, I was under the impression that the State had retooled that count of the information.  If I was incorrect in that, you know, so be it.  There was testimony in the record to support that Nugent had received serious injury.  If that wasn't alleged in the information as amended, so be it.
Q.      And did you believe there to be any validity to the argument that the verdicts were general verdicts and not specific verdicts?
A.      Well, you know, assuming that the Information didn't have that second prong in there, that could be problematic.  I mean, and you get to the situation where it's harmless error or not, I don't know.

**(Ex. P, pp. 59-60).  The record is clear that the State did not amend the aggravated battery charge.  But even conceding that Mr. Dingus' belief that the State had amended the aggravated battery charge fell below the wide range of reasonable,**

professional assistance, Mr. Farmer still must show he was prejudiced by Mr. Dingus' error.  *See Chandler*, 218 F.3d at 1314.

Mr. Farmer's argument that Mr. Dingus failed to preserve the claim for appeal is inaccurate.   According to Florida Supreme Court precedent, a claim of instructional error can be raised on appeal absent trial counsel's contemporaneous objection if fundamental error occurred.  *Reed v. State of Florida*, 837 So.2d 366, 370 (Fla. 2002).  The error is fundamental if "the verdict could not have been obtained without the assistance of the alleged error."  837 So.2d at 370 (quoting *State of Florida v. Delva*, 575 So.2d 643, 644-45 (Fla. 1991)).  Respondent contends the verdict form was a special verdict because it stated, "The Defendant is Guilty of Aggravated Battery on a Police officer *as charged*."  (Doc. 36, p. 32) (emphasis added).  It cites *Cardenas v. State of Florida*, 867 So.2d 384, 388 (Fla. 2004), but Respondent's interpretation of *Cardenas* is incorrect. In *Cardenas*, the court stated, "The jury, utilizing a *general verdict form*, found Cardenas guilty *as charged*."  *Id.* at 388 (emphasis added).  The *Cardenas* court cited *Bonine v. State of Florida*, 811 So.2d 863, 866 (Fla. 5th DCA 2002).  The trial court in *Bonine* also "[utilized] a *general verdict form*, [and] the jury found Bonine guilty *as charged . . ..*"  *Cardinas*, 811 So.2d at 389 (emphasis added).  Based on Florida Supreme Court precedent, the jury in Mr. Farmer's case returned a general verdict.  Therefore, Mr. Farmer's contention that Mr. Dingus' failure to object denied Mr. Farmer appellate review that would have invalidated the trial is valid if the appellate court would find fundamental error because the element was disputed at trial and was an essential element of the offense.  *See Reed*, 837 So.2d at 369.

Federal habeas courts do not apply the "harmless beyond a reasonable doubt standard" on collateral review.  *Vining v. Sec'y, Dep't of Corr.*, 61 F.3d 568, 571 (11th Cir. 2010); *but see Delap v. Dugger*, 890 F.2d 285 (11th Cir. 1989) (harmless error standard of proof is error that did not contribute to verdict beyond a reasonable doubt); *see also Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 1833, 144 L.

Ed. 2d 35 (1999) (same).  Instead, federal habeas courts apply a more deferential standard:  error is harmless unless it had "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 1722, 123 L. Ed. 2d 353 (1993).  Although petitioners obtain plenary review of constitutional claims, they are not entitled to habeas relief on trial error unless the error resulted in "actual prejudice."  *Vining*, 61 F.3d at 571 (citing *Prevatte v. French*, 547 F.3d 1300, 1305 (11th Cir. 2008).

Most constitutional errors are harmless.  "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis."  *Neder*, 527 U.S. at 8, 199 S. Ct. at 1833 (citing *Rose v. Clark*, 478 U.S. 570, 579, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986) (referring to Rule 52(a), Federal Rules of Criminal Procedure).[20]  Similarly, when the erroneous jury instruction concerns an essential element that was uncontested at trial, the judgment should not be overturned.  *See Johnson v. United States*, 520 U.S. 461, 469-470, 117 S. Ct. 1544,1550, 137 L. Ed. 2d 718 (1997) (uncontroverted evidence at trial established omitted element, so omission did not change verdict); *Reed v. State of Florida*, 837 So.2d 366, 369 (Fla. 2002) (failure to correctly define an essential element is fundamental error where the element is disputed at trial).

Under clearly established federal law, implicit in the Rule 3.850 court's decision is the conclusion that the trial error, if any, was harmless error.  The undersigned, applying the "actual prejudice" standard, cannot say that, applying the appropriate deference, the record could not support this conclusion.  Mr. Farmer's claim that he was prejudiced by his counsel's failure to object so as to seriously affect the integrity of the judicial proceedings in violation of his constitutional right

---

[20]  In *Neder*, the court considered a jury instruction that omitted a material element of tax fraud, for which Neder was convicted.  *Id.*  The court held that "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontroverted and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless."  527 U.S. at 17, 199 S. Ct. at 1837.

to effective assistance of counsel and to a fair trial fails.  Mr. Farmer wanted Mr. Dingus to proceed with the self-defense argument (ex. P, p. 42).  Mr. Dingus argued the self-defense theory to the jury in closing (ex. B, pp. 240-244).  Mr. Dingus, the prosecutor, and the trial court judge had a lengthy discussion regarding how to give a self-defense jury instruction (ex. B, pp. 196-203).  The court in fact gave the following instruction:

> Since there are many - - I'm sorry.  And [sic] issue in this case is whether the Defendant acted in self-defense.  It is a defense to the offenses with which the Defendant, Wellington Farmer, is charged, if the injury to Joe Nugent resulted from the justifiable use of force likely to cause death or bodily harm
>
> . . .
>
> However, the use of force likely to cause death or great bodily is not justifiable if you find that the Defendant, Wellington Farmer, was attempting to commit, committing or escaping after the commission of aggravated battery on a law enforcement officer or resisting arrest with violence.

. . ..

(Ex. B, pp. 263-264).  By asserting self-defense as an affirmative defense to aggravated battery on a law enforcement officer, Mr. Farmer conceded that he used his vehicle (a deadly weapon) to strike a law enforcement officer, but argued it was reasonable force.  Several witnesses testified that Major Nugent sustained injuries as a result of being thrown from the vehicle when Mr. Farmer turned or swerved (*see ex. B*, pp. 46, 103, 122).  Therefore, his counsel could not be ineffective for failing to object to an allegation that was essential to Mr. Farmer's defense.

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," and it was not based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra.*  Mr. Farmer is not entitled to federal habeas relief, and the writ should not issue.

## (B)B   Failure to move to dismiss the aggravated fleeing or attempting to elude count.

Mr. Farmer alleged in his motion for post-conviction relief that the information purporting to charge him with aggravated fleeing or attempting to elude a law enforcement officer charged him with criminal conduct not found in that section (ex. M, p. 19).  He argues that while the information cites Fla. Stat. § 316.1935(3), it "borrows elemental language" from § 316.1935(1) and 316.1935(4)(a) (ex. M, p. 20). He recites a settled principle that one cannot be convicted of a non-existent crime. His counsel failed to move to dismiss or otherwise challenge the charge, which prejudiced Mr. Farmer because he was convicted of a non-existent crime, denied appellate review on this charge, and calls into question the reliability of a jury verdict based on the information.  He specifically states that the jury instructions included uncharged conduct of driving at a high speed or with wanton disregard for the safety of others.  (Ex. M, pp. 22-23).[21]

### State Court Decision

The Rule 3.850 court did not address this claim in denying Mr. Farmer's motion.  Mr. Farmer (through counsel) appealed denial of his Rule 3.850 motion on this issue (ex. S).  Mr. Farmer and respondent submitted briefs (exs. T, U).  The First DCA per curiam affirmed the Rule 3.850 court's decision (ex. V).

### Federal Review of State Court Decision

The Rule 3.850 court denied Mr. Farmer's motion without addressing Ground One (B)B.  Under Eleventh Circuit precedent, the habeas court will "'look through' a summary decision to the 'last reasoned decision' on the issue." *McGahee v. Alabama Dep't of Corr.*, 560 F.3d 1252, 1262 n.12 (11th Cir. 2009) (quoting *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1317 (11th Cir. 2006)); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594, (1991) (". . . the *Harris* presumption only applies after habeas court determines 'the relevant state court

---

[21]  Mr. Farmer also incorporates his arguments from Ground One(B)A. (Doc. 1, p. 4G); ex. M, p. 23).

decision . . . fairly appear[s] to rest primarily on federal law or [is] interwoven with [federal] law.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 740, 111 S. Ct. 2546, 2559, 115 L. Ed. 2d 640 (1991). The Rule 3.850 court should have but failed to render the last reasoned decision. Therefore, under Eleventh Circuit precedent and the reasoning in *Cavazos, supra*, the undersigned finds it appropriate to review the claim *de novo*.

Mr. Farmer clearly labels his claim as one for ineffective assistance of counsel in violation of the Sixth Amendment  (doc. 1, p. 4E; doc. 15, p. 15).  This court must determine if, applying the standard set forth in *Strickland,* Mr. Farmer has shown that his counsel's actions fell below an objective standard of reasonableness and that but for counsel's actions there is a reasonable probability the outcome of the trial would have been different.   A federal habeas court reviewing a state-court determination where constitutional trial court error is alleged should apply the "harmless error" standard enunciated in *Kotteakos v. United States*, 328 U.S. 750, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946).  "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  *Brecht*, 507 U.S. at 637, 113 S. Ct.  at 1722.  The Supreme Court in *Kotteakos* held that habeas relief is only appropriate when "the error had substantial and injurious effect or influence in determining the jury's verdict."  *California v. Roy,* 519 U.S. 2, 4-5, 117 S. Ct. 337, 338 (1996) (citing *Kotteakos, supra*).

Mr. Farmer alleges Mr. Dingus was constitutionally ineffective for failing to dismiss or object to the State's original Count IV (ex. M, p. 19).  Mr. Farmer's grounds for prejudice are that he was tried on a defective charge, which calls into question the reliability of the outcome of the proceedings (ex. M, p. 22).  Mr. Farmer's petition for relief asserts the information was so "indistinct or indefinite and embarrassed the Petitioner in the preparation of his defense." (Doc. 1, p. 4G).  He also alleges his counsel's failure to move for dismissal or object to the defective charge denied Mr.

Farmer direct appellate review (doc. 1, p. 4G).  He incorporates his arguments from the previous claim (doc. 1, p. 4G).[22]  The undersigned addresses each argument in turn.

The jury found Mr. Farmer guilty of Aggravated Fleeing or Attempting to Elude a Law Enforcement Officer, as charged.  The information charged:

> COUNT IV:  Wellington L Farmer on or about July 12, 2002, in the County of GULF and State of Florida, did having knowledge of an order to stop by a duly authorized law enforcement officer, in an authorized law enforcement vehicle with agency insignia and lights and siren activated, did willfully flee in an attempt to elude such officer, and as a result of such fleeing or eluding, did cause injury to the person or property of Joe Nugent, contrary to Florida Statute 316.1935(3). (2 DEG FEL)

(Ex. A).  Section 316.1935(3) of the Florida Statutes states:

> (3)    Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle with agency insignia and other jurisdictional markings prominently displayed on the vehicle with siren and lights activated, and during the course of the fleeing or attempted eluding drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 316.1935(3) (West 2002).

The Florida Rules of Criminal Procedure govern the sufficiency of a criminal information.  Each charge in the indictment must include:

> (1) Allegation of Facts; Citation of Law Violated.  Each count of an indictment or information on which the defendant is to be tried shall allege the essential facts constituting the offense charged.  In addition, each count shall recite the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged

---

[22]  It is unnecessary to readdress the arguments of Claim (B)(A) except to note that Mr. Farmer's primary argument–Major Nugent was not conducting a lawful investigation–is inapplicable here.  The offense of fleeing and eluding police officer did not require lawfulness of police action as an element of the offense.  *See Jackson v. State of Florida*, 463 So.2d 372 (Fla. 5th DCA 1985).  Mr. Farmer is not entitled to relief under this argument.

to have violated.  Error in or omission of the citation shall not be ground for dismissing the count or for a reversal of a conviction based thereon if the error or omission did not mislead the defendant to the defendant's prejudice.

Fla. R. Crim. P. 3.140(d).  Furthermore, a defect in the information alone is insufficient to warrant dismissal:

> (o) Defects and Variances. No indictment or information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense.

Fla. R. Crim. P. 3.140(o).  The standard for dismissal of a deficient complaint is high.  Mr. Farmer claims the charge rose to this level of defect (ex. M, p. 22).  The record does not support this conclusion.  The information with which the State provided Mr. Dingus listed the charge and the statutory reference (ex. B).  As a matter of Florida law, the statutory reference provided in the charge gave Mr. Dingus adequate notice of being charged with each element of the offense.  *Duboise v. State of Florida*, 520 So.2d 260, 265 (Fla. 1988) (when information cites a statute, defendant is on notice that he is charged with each element of the offense in the statute); *see also Calloway v. State of Florida*, 37 So.3d 891, 894 (Fla. 1st DCA 2010) (same).  Furthermore, Mr. Dingus testified at the evidentiary hearing that he requested and reviewed discovery from the State, including the police reports (ex. P, p. 46).  He also testified that he set depositions for the witnesses the state listed, including several law enforcement officers who testified at trial (*id.*).  It is reasonable to assume that the witnesses deposed testified similarly at trial (with the exception of Mr. Player's inconsistent testimony (ex. B, pp. 109-110)).  Under these facts, there is no reasonable possibility that Mr. Dingus was unaware of what the State was charging and what evidence it

would present at trial, so Mr. Farmer's claim that Mr. Dingus' failure to move to dismiss the charge rendered him ineffective as counsel is without merit.[23]

For these reasons, Mr. Farmer is not entitled to federal habeas relief, and the writ should not issue.

### (C)   Violation of Mr. Farmer's Sixth and Fourteenth Amendment right to a fair trial.

Mr. Farmer presented this claim as Point Three, Subpoints A and B, in his motion for post-conviction relief.   Point Three generally alleges, "Defendant's judgments of conviction were entered in violation of the Federal and State Constitutions in that Defendant was denied a trial by a jury of his peers."  (Ex. M, p. 23).  The undersigned sets out the nature of each sub-claim independently but finds it appropriate to review both claims together.

### (C)A   Failure to assure trial by a jury of defendant's peers by failing to call an adequate number of prospective jurors.

In Subpoint A, Mr. Farmer argues the trial court failed to call an adequate number of prospective jurors, so he was "precluded in having a sufficient cross-section of the community at large from which to pick an impartial jury of his peers." (Ex. M, pp. 25, 27).  The court seated nineteen prospective jurors (ex. BB).  Citing Section 40.02, Florida Statutes (2002), he concludes that of a list of 250 people, the court could have summoned more jurors "so as to allow for six panel members and one alternate, plus six peremptories [sic] for each party with some consideration for strikes for cause."  (Ex. M, p. 28).

---

[23]  The undersigned also notes that Mr. Dingus did argue in his motion for judgment of acquittal that the charge should be reduced to a third degree felony based on a lack of evidence attempting to show that Mr. Farmer drove at a high rate of speed at the same time he was being pursued by marked patrol cars (ex. B, pp. 130-131).

### (C)(B)  Trial court error by excluding only prospective African-American Jurors

In Subpoint B, Mr. Farmer argues the trial court erred in allowing the State to exclude the only black jurors in the jury panel (p. 28, 31).  He alleges the State's reason for striking the jurors was race-motivated (ex. M, p. 29).  He recounts the relevant portions of the voir dire examination, which quotations for the most part comport with the record.  Mr. Farmer's counsel objected to dismissal of Ms. Lewis and requested a race-neutral reason (ex. BB, p. 37).  The court conducted a brief hearing, during which the State brought forward that Ms. Lewis' husband was a witness for the defense, and the court overruled the challenge (ex. BB, pp. 38-39). The State then moved to strike Ms. Fennell because she knew Mr. Farmer from the community, possibly on a first-name basis (ex. BB, p. 39 ).  Mr. Farmer's counsel objected several times, but after the court reviewed Ms. Fennell's statement that she knew Mr. Farmer by his first name, the court granted the State's peremptory challenge (ex. BB, pp. 40-41).  Mr. Dingus renewed his objection for the record and the court orally took notice (ex. BB, p. 41).  As a result of the State's challenges, the empaneled jury did not contain any African-American jurors.  Mr. Farmer claims he was denied "the constitutional rights to a fair and impartial trial before a jury of his peers, due process of law, and equal protection of the laws (ex. M, p. 23, 29).

### State Court Decision

During the evidentiary hearing on Mr. Farmer's motion, the court found based on the parties' representations that Mr. Farmer withdrew the arguments in Point Three of his Rule 3.850 motion.  On direct examination by the Mr. Farmer's appellate counsel, Mr. Ramey, Mr. Farmer stated he did not believe Mr. Dingus acted ineffectively:

> Q      Okay.  Now, your third point, which begins on page is [sic] 23, is basically a Batson (phonetic) issue in the beginning.  Also, has some slapping, some Neil (phonetic) issues involved in it as well where only two black folks on the Jury were struck from your Jury by Assistant State Attorney Steve Meadows, is that correct?
>
> A      Yes, sir.

Q    Now, in this issue, you've indicated that Mr. Dingus made objections to the striking of both of these individuals, who were black in race, and you're also of the black race, correct?

A    Yes, sir. Sir, let's be on the same page. I'm sorry for interrupting you. What page are you on?

Q    Page 23, sir.

A    You're on page 23, okay.

Q    Now, in your brief you indiactte that Mr. Dingus made the objectiong that the State was striking these two individuals for race reasons and the reasons given to the Court were not race neutral. And Judge McClellan, after some review of the issues, allowed the State to strike both of these individuals notwithstanding Mr. Dingus' objection, correct?

A    Yes.

Q    And I believe you indicate that you blame the Court and the Court should not have allowed Mr. Meadows, and I quote you, should not have "the Court should not have been so duped by Mr. Meadows in his allegations of race neutral reasons" and you believe the Court should have called additional jurors to allow you to have a more, more of an opportunity to have members of the black race on your Jury Venire, is that correct?

A    Yes, sir.

Q    And you're not alleging Mr. Dingus did anything improper or failed to make the proper objections to them being stricken, is that right?

A    Correct.

(Ex. P, pp. 23-24). On cross-examination and further questioning by the court, Mr. Ramey interjected and appeared to represent to the court that Mr. Farmer was withdrawing his Point Three arguments:

Q    Okay. Now, you've previously stated on direct examination that Mr. Dingus did nothing wrong during, during the selection of the Jury, correct?

A    He did nothing wrong? Yes, allowing Ms. April McLemore not being stricken.

Q    Okay. That's, that's in point number four. As to point number three, point number three deals with the - -

MR. RAMEY:   Your Honor - -

Q    - - point number - -

MR. RAMEY:   - - for sake of clarity, we're not going to argue that Mr. Dingus did anything ineffective in point three because it's quite

clear in the motion that he's blaming the Court, not Mr. Dingus.  Mr Dingus did make contemporaneous objections.

THE COURT: Okay.  So as to his point three, is Mr. Farmer withdrawing that point?

MR. RAMEY: Yes, Your Honor.

**(Ex. P, pp. 40-41).**

The Rule 3.850 court addressed Mr. Farmer's Subpoint B in its order denying the motion:

> 6.     Defendant's Ground Three alleged trial counsel failed to object to [the] state striking a black (African-American) juror from the venire.  It should be noted that defendant is black (African-American).  Defendant has withdrawn this allegation because trial counsel did object.

**(Ex. Q, p. 80).**

<u>Federal Review of State Court Decision</u>

The Rule 3.850 court mis-stated Mr. Farmer's claim in Point Three when it found Mr. Farmer withdrew the allegation.  Mr. Farmer does not allege his trial counsel was ineffective.  In fact, as Mr. Ramey pointed out during the evidentiary hearing, it is clear that Mr. Farmer's claim alleges constitutional error by the <u>trial court</u>, not trial counsel (ex. P, p. 41).  This court cannot discern from the record whether Mr. Ramey actually intended to abandon Mr. Farmer's argument entirely, or whether he only meant to clarify that as to any allegations of ineffective assistance of counsel, Mr. Farmer was withdrawing that point.  In addition, it is equally unclear whether the judge presiding over the evidentiary hearing understood either the nature of Mr. Farmer's claim or to what arguments he was withdrawing.

What is clear is that Mr. Farmer's Point Three, Subpoints A and B, claim the court violated his Sixth and Fourteenth Amendment right to a fair trial (ex. M, p. 27). In Subpoint A, Mr. Farmer cites Rule 3.850(a)(1), which states that a motion is appropriate when: "(1) The judgment was entered or sentence was imposed in violation of the Constitution or laws of the United States or the State of Florida." (Ex.

M, p. 27).  In Subpoint B, Mr. Farmer alleges a violation of the clearly established law

in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986):

> Defendant submits that when taken in context of the same refrain being posited by the State regarding both black jurors - that they would be presumably sympathetic to the defense du to knowing him from the community - the argument lacks genuineness and is rife with incredulity.  Put bluntly, the State methodically and discriminatorily struck each African-American from the jury - purposely.  *The Court erred in being drawn into this absurd pretense.*

(Ex. M, p. 31) (emphasis added).[24]  The trial court's conclusion based on the record

and evidence in front of it was not only erroneous, it was objectively unreasonable.

*See* § 2254(d)(2), (e)(1); *Gill v. Mecusker*, 633 F.3d at 1287.

Despite the Rule 3.850 court's unreasonable determination, while Mr. Farmer's

Point Three implicates the Due Process Clause, it is not identical to the claim Mr.

Farmer raises in the instant habeas proceeding.  The habeas petition's Ground (C)

and Subpoints correlate to the post-conviction motion's Point Three.  But in Ground

(C), Mr. Farmer reverts to an ineffective assistance of trial counsel claim (doc. 1, p.

4H-I).  Mr. Farmer states he does not contend trial counsel objected to the State's

peremptory challenges.  In Subpoint A, he states, ". . . counsel should have assured

that the pool was then refreshed with at least 2 additional African-American [sic]."

(Doc. 1, p. 4H).   In Subpoint B, he states, "[t]he only cure [to denial of the

constitutional right] would have been to replace the excluded African-Americans and

counsel's performance was deficient for failing to do so (doc. 1, p. 4I).  The claims

in the two proceedings, although based on the same facts, are not virtually identical.

*See, e.g., Duncan*, 513 U.S. at 366, 115 S. Ct. at 888 (claims were not "virtually

identical" but only "somewhat similar," and "mere similarity of claims is insufficient

---

[24] The Supreme Court in *Batson* established a procedure for raising and testing whether a peremptory challenge is based on racial discrimination.  When the defendant states a prima facie case of purposeful discrimination in selection of a jury based on evidence of the prosecutor's exercise of a peremptory challenge, the court must inquire into the claim.  *Id.* at 96-97, 1723.  The burden shifts to the prosecutor to explain a race-neutral reason for the challenge.  *Id.*  The burden of justification is not as high as that for justifying a challenge for cause.  *Id.*

to exhaust.") (citations omitted).  Furthermore, any attempt on Mr. Farmer's part to return to state court to raise the instant claim would be barred as untimely.  *See* Fla. R. Crim. P. 3.850(b).  Resultantly, petitioner's claim fails because it is procedurally defaulted.

### (D)    Failure to strike an admittedly biased juror.

Mr. Farmer claims Mr. Dingus was ineffective for failing to strike April McLemore from the jury (doc. 1, p. 4J; doc. 53, ex. M, p. 31).  Mr. Farmer paraphrases portions of the voir dire in which Ms. McLemore expressed doubt about her ability to separate her friendship with law enforcement officers from the facts of the case (ex. M, pp. 32-33).  In fact, the Florida Department of Corrections employed Ms. McLemore's husband (ex. BB, p. 16), although following this disclosure, Ms. McLemore stated: "I'm not familiar with anyone, I've never served and I have no family in law enforcement." (Ex. BB, p. 16).  Mr. Dingus also questioned Ms. McLemore about her ability to be impartial:

> MR. DINGUS: The main witnesses for the State in this case will be police officers.  Is there anybody on the panel who feels that they would have to believe law enforcement officers' testimony based simply because the witness is a law enforcement officer?
> MS. McLEMORE: Personally I'm really too close to Chris Buchannan and Robbie Player to separate our relationship.  We, you know, get together socially but it would be really hard for me, you know, based on say - I know what you're saying.  And I'm just being honest.
> MR. DINGUS: And I appreciate that.  I mean, that's - - I appreciate your - -
> MS. McLEMORE: I just wanted to be honest.
> MR. DINGUS: Given that, do you think that while you might be fair, on a particular jury you might not want to sit on this one?
> MS. McLemore: Exactly because of the friendship there.

(Ex. BB, p. 30).  Mr. Farmer contends these statements evidence Ms. McLemore's clear bias, and Mr. Dingus was ineffective for failing to strike her (ex. M, p. 33).  He claims he was prejudiced because "bias contaminates the 'entire conduct of the trial

from the beginning to end.' *Arizona v. Fulminante*, 499 U.S. 279, 309-310 (1991). . .." (Ex. M, p. 34).

In Mr. Farmer's habeas petition, he adds that although the Rule 3.850 court found Mr. Farmer consented to the panel Mr. Dingus selected, his consent cannot overcome Mr. Dingus' deficient performance (doc. 1, p. 4K).

### State Court Decision

The Rule 3.850 court denied the claim on the merits:

> Defendant's Ground Four alleges trial counsel failed to strike a juror because she knew two law enforcement officers who would be called as witnesses. Trial Counsel testified that the Defendant did participate in jury selection and give his opinions on jurors but basically left that to trial counsel. Trial counsel stated as part of trial strategy he believe [sic] it was better to keep this juror than other jurors that were coming up next. This is a small community where many people know each other. The juror stated she could be fair. Defendant was asked did he approve these seven jurors including this particular juror and he agreed with trial counsel on the seven jurors. This ground is without merit.

(Ex. Q, p. 80).

### Federal Review of State Court Decision

The Rule 3.850 court, in applying the first prong of *Strickland*, found Mr. Farmer's trial counsel was not deficient for failing to strike Ms. McLemore. This decision is not unreasonable in light of clearly established Supreme Court precedent as applied to the record.

At the evidentiary hearing, Mr. Dingus stated that he discussed jury selection with Mr. Farmer contemporaneously with voir dire. He told Mr. Farmer he had some concerns about Ms. McLemore, he explained that "tactically if Ms. McLemore was taken off the Jury . . . there were risks associated with doing that" because they may get another juror who was worse, including one juror he specifically remembered. He indicated he asked Mr. Farmer what he wanted to do and Mr. Farmer deferred to Mr. Dingus' judgment. (Ex. P, pp. 49-50, 61). In direct contradiction, Mr. Farmer

testified he never discussed jury selection with Mr. Dingus and "left everything up to Mr. Dingus."  (Ex. P, pp. 42-43).

At jury selection, after counsel's sidebar, the court listed the jurors who would be impaneled and asked Mr. Farmer directly if he was "satisfied with the selection of this jury."  (Ex. BB, p. 42).  Mr. Farmer responded: "If Mr. Dingus is satisfied, I am, too, sir."  (*Id.*).

The Rule 3.850 court found Mr. Dingus' testimony that he consulted with Mr. Farmer more credible than Mr. Farmer's testimony denying any discussions.  The court's factual determination is entitled to deference under the AEDPA.  28 U.S.C. § 2254(e)(1); *see Miller v. Fenton*, 474 U.S. 104, 114, 106 S. Ct. 445, 452, 88 L. Ed. 2d 405 (1985) (Issues involving the credibility of witnesses turn largely on an evaluation of demeanor;  habeas courts should accord the trial court's determinations presumptive weight.).  Furthermore, Mr. Farmer stated in court that he was satisfied with the jury selection (ex. BB, p. 42).

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," and it was not based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Farmer is not entitled to federal habeas relief on this claim, and the writ should not issue.

### (E)A and B    Interference with Mr. Farmer's right to testify at trial.

Ground Five in Mr. Farmer's motion for post-conviction alleges Mr. Dingus was ineffective by interfering with Mr. Farmer's constitutional right to testify at trial in violation of the Fifth Amendment (ex. M, p. 34).  Subpoint A states that Mr. Dingus misinformed Mr. Farmer by telling him his prior felony drug convictions would be disclosed if he testified, and Mr. Farmer did not testify based on that information (ex. M, p. 37).  Subpoint B states Mr. Farmer involuntarily waived his right to testify

because he did so with the belief that Mr. Dingus would "advise the jury" of the basis for his theory of self-defense but failed to do so (ex. M, p. 38).

### State Court Decision

The Rule 3.850 court denied these claims on the merits (ex. Q, p. 80).  As to Subpoint A, the trial court stated:  "Defendant has past criminal convictions and trial counsel advised against testifying but told defendant it was his decision."  (Ex. Q, p. 80).  The undersigned finds the Rule 3.850 court recognized Mr. Farmer's theory in Subpoint B because the court concluded that even without Mr. Farmer's testimony, other witnesses sufficiently raised the issue of whether Mr. Farmer knew Major Nugent was an officer to allow the jury to make a factual determination regarding self-defense (ex. Q, p. 80).  The remainder of the decision focused on the overarching "involuntariness" argument.   It referred to Mr. Farmer's statement during the evidentiary hearing that Mr. Dingus would not have stopped him had he insisted on testifying.[25]  It also relied on Mr. Dingus' statement (contradicting Mr. Farmer's statement) that between pre-trial conversations and a conversation during the trial Mr. Dingus discussed the issue of testifying four times, and Mr. Farmer made the final decision (*see* ex. P, p. 62).

### Federal Review of State Court Decision

Mr. Farmer's claim (E)A and B of his habeas petition mirror his post-conviction motion (doc. 1, pp. 4K-M).  The Rule 3.850 court found that Mr. Farmer did not meet either prong of the  *Strickland* test.   In essence, Mr. Dingus was not ineffective because Mr. Farmer made a voluntary decision not to testify after multiple discussions with his counsel, and Mr. Farmer was not prejudiced because the jury could make the factual determination of whether Mr. Farmer acted in self-defense by evaluating other witness testimony.  The record supports the court's conclusion.

---

[25]  The undersigned gleans from this statement that the court was referring to Mr. Farmer's testimony that "[w]e didn't discuss it, but the question was asked whether or not I wanted to [testify] and it was my decision not to, but if it was in my best interest to, there are numbers of cases indicating that that was his sole responsibility."  (Ex. P, p. 27).

Mr. Farmer essentially abandoned his argument in Subpoint A by testimony at the evidentiary hearing.  On direct examination, Mr. Farmer admitted that the argument in Subpoint A was inaccurate:

> **Q**      All right.  Now, you've indicated in your sub point A, which is found at the top of page 37 of your brief, that Mr. Dingus told you that if you took the stand, the nature of your prior felonies would be disclosed to the Jury, is that correct or mistaken?
>
> **A**      That's a mistaken [sic], all out of this all, that's the only one and that's really not a mistake, it depends on how you read, you know.  You can tell me things and I can comprehend for myself, but it still doesn't weigh the fact that he should have informed me to testify.
>
> **Q**      Okay.   But we've got to make sure that the Court understands that you're not indicating now, and correct me if I'm wrong, that Mr. Dingus told you that if you took the stand and testified, the nature of your prior drug act would be admissible, he didn't tell you that?
>
> **A**      He didn't tell me that.  And, Your Honor, that's the only thing in this entire brief that he didn't, and I had told Mr. Ramey that from the start, you know.

(Ex. P, p. 29).  The court asked for clarification of Mr. Farmer's position as to Subpoint A, to which Mr. Ramey stated:

> Basically, Your Honor, what he's saying is sub point A is inaccurate.  He's not stating that Mr. Dingus told him that if he did take the stand, the nature of his prior drug felony would become admissible before the Jury, he's saying that was a misstatement of the brief, and he's not saying that that did occur.  And, in fact, Mr. Dingus did file a Motion in Limine to prevent the State from doing that in the event they attempted to.

(Ex. P, pp. 29-30).  Based on the record, Mr. Farmer withdrew his argument in Subpoint A.

In Mr. Farmer's habeas petition, he asserts the Rule 3.850 court did not address Subpoint B in its decision (doc. 1, pp. 4K-L).  The Rule 3.850 court does not have to cite or be aware of controlling case law, or explain its reasoning, so long as the ultimate conclusion does not run afoul of clearly established federal law.  *See Richter*, 131 S. Ct. at 780, 784; *Childers*, *supra*, at *11.  Mr. Farmer is incorrect; the

court did not need to restate the argument to rule on its merits; it ruled on the merits when it found there was sufficient testimony to alert the jury about the self-defense claim.

The Rule 3.850 court's ultimate conclusion is reasonable based on the record. Under either the theory that Mr. Dingus misadvised Mr. Farmer about testifying, or the alternate argument that Mr. Dingus did not make the statement Mr. Farmer requested regarding self-defense, Mr. Farmer's fails to meet either prong of the *Strickland* test.   In addition to testimony implicating a self-defense argument, the trial court instructed the jury as to self defense, and both the State's counsel and Mr. Dingus addressed it in closing arguments (*see, e.g.*, ex. B, pp. 222, 263-264).

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," and it was not based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Farmer is not entitled to federal habeas relief on this claim, and the writ should not issue.


**(F)**    **Failure to object or move for mistrial based on prosecutorial misconduct.**

Mr. Farmer believes several of the State's counsel's statements during his closing argument rose to the level of prosecutorial misconduct (doc. 1, pp. 4M-O; doc. 15, ex. M, pp. 41-45).  He states that despite the State's non-prosecution of the attempted murder charge, the comments "invited [the jury] to convict Defendant of a crime no longer charged by characterizing his actions as attempts on Major Nugent's life." (Ex. M, p. 42).  Farmer quotes several of the State's comments in his post-conviction motion, which he characterizes as facts not in evidence:

> He made a decision on July 12,th, 2202 that he was going to have his freedom even at the expense of the life of Joe Nugent.

(Ex. B, p. 212).

. . .And if it mean that Joe Nugent had to die for him to get away, he was prepared to do that.

**(Ex. B, p. 213).**

What does common sense tell you about putting a body in motion at 57 miles per hour and putting that body in contact with asphalt at 57 miles per hour, is that likely to cause death or great bodily harm.  I submit to you that it is.

**(Ex. B, p. 216).**

We can spend time instructing on self-defense.  And you will hear that, because that's one of their claims.  You heard it in opening statement, they're claiming all this because of self-defense, and there wasn't a gun drawn before he ever did it.

That's lawyer speaking. . ..

**(Ex. B, p. 222).**

You know Mr. Dingus is a skillful lawyer.  He's representing his client to the best of his ability, as I am attempting to do with my client.

**(Ex. B, p. 247).**

He has attempted to put Terry Harrell on trial today.. . .

. . .

But let's put Mr. Harrell on trial.  And if you don't like trying Mr. Harrell, let's put Joe Nugent on trial.. . .

. . .

. . .for burglary.

**(Ex. B, pp. 247-250).  (*See* ex. M, pp. 42-44).  In his Rule 3.850 motion, Mr. Farmer claims he was prejudiced in two respects: 1) the comments "so pervaded the process that the reliability of the outcome is legitimately called into question"; and 2) counsel's failed to preserve the argument for direct appeal because he did not make contemporaneous objections (ex. M, p. 41, 45).  However, in Mr. Farmer's habeas petition, he only argues prejudice in that failure to object or move for a mistrial "precluded review on direct appeal."  (Doc. 1, p. 4O).**

## State Court Decision

The Rule 3.850 court denied the claim on the merits (ex. Q, p. 80). It relied on Mr. Dingus' testimony at the evidentiary hearing:

> [H]e did not believe the comments rose to the level of an objection and even if he had objected he did not believe the trial court would sustain the objections and that he would then alienate the jury by his objections.

(Ex. Q, p. 80). He also noted that Mr. Farmer raised the issue on direct appeal, and the First DCA denied relief (ex. Q, p. 80).

## Federal Review of State Court Decision

As stated in Ground One, (B)A, when a petitioner alleges his trial counsel was ineffective for failing to object because it precluded appellate review of the trial court's error, petitioner necessarily claims the appellate court would find fundamental error on review that would vacate the judgment and sentence. Habeas relief based on trial court error is only appropriate if the petitioner shows the error had a substantial and injurious effect on the jury so that he was actually prejudiced. *See Brecht*, 507 U.S. at 619, 113 S. Ct. at 1722; *Vining*, 61 F.3d at 571. The Rule 3.850 court essentially deferred to the First DCA's opinion denying Mr. Farmer's direct appeal in finding Mr. Farmer failed to meet the prejudice prong of *Strickland*. The undersigned agrees that Mr. Farmer fails the tests under both *Brecht* and *Strickland* and cannot prevail on an ineffective assistance of counsel claim based on failure to preserve the issue for appeal.

Mr. Farmer's alternate argument that Mr. Dingus' failure to object calls into question the validity of the verdict is more straightforward but also unpersuasive. The Rule 3.850 court found Mr. Dingus' explanation of why he did not object to be credible. This court gives deference to the trial court's credibility determinations. *Baldwin*, 152 F.3d at 1317. At the evidentiary hearing, Mr. Dingus explained why he did not object during the State's closing argument:

> **A**      That's a good question.  There was a, there were some comments he made that were right up to the line, but it's sort of a trade off in closing argument.  If, if it's not something that's just blatant error, sometimes you can do more harm by objecting and getting overruled because you lose credibility as a lawyer in th eyes of the Jury at that point.
>
>      The comments that were at issue, it was my opinion at the time that had we objected, Judge McClellan would not have made a finding that they were error.  And I say that because while they were tough comments by the State, I don't think they were unfairly tough.
>
>      In specific, the stuff about the damages you're talking about, in that, I mean, the State is allowed to make comments in fairness based on the inferences that can be drawn from the facts that are educed during the trial, and quite frankly, I mean, the harge against Mr. Farmer at that time was aggravated battery against Mr. Nugent, and, you know, to the extent that the automobile being alleged is a deadly weapon, it's probably going to be found to be fair game.  The other comments alleged, I didn't think objecting on his behalf at that point was going to help him if his case was going to rise or fall on the issue of self defense.

(Ex. P, pp. 65-66).  Mr. Dingus' decision was based on professional judgment that falls well within the range of acceptable attorney conduct under *Strickland*. Respondent provides further support that attorneys are afforded wide latitude in closing arguments, and the State's closing arguments were reasonable given the nature of the charges against Mr. Farmer (*see* doc. 36, pp. 63-67).  Mr. Farmer asserts the State's remarks improperly refer to the attempted murder charge that the State abandoned mid-trial.  In fact, all of the comments with which Mr. Farmer takes issue apply equally to the aggravated battery charge alleging use of a deadly weapon.  Mr. Farmer failed to show his counsel's representation fell below an objective standard of reasonableness.

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," and it was not based on an unreasonable determination of the facts in light of the evidence

presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Farmer is not entitled to federal habeas relief on this claim, and the writ should not issue.

### (G)    Failure to move for judgment of acquittal.

Mr. Farmer contends his trial counsel was ineffective for failing to move for a judgment of acquittal at all times allowed under Rule 3.380, Florida Rules of Criminal Procedure, on the count of aggravated battery on a law enforcement officer. In Mr. Farmer's habeas petition, he contends the State failed to put forth sufficient evidence that: 1) Mr. Farmer knew Major Nugent was a law enforcement officer; 2) Mr. Farmer used his vehicle as a deadly weapon; 3) Mr. Farmer touched or struck Mr. Nugent; and 4) Mr. Nugent was engaged in the lawful performance of his duties. (Doc. 1, p. 4P).  However, in Mr. Farmer's motion for post-conviction relief, he states: "The elements of the offense charged which the State utterly failed to establish . . . were that defendant touched or struck Joe Nugent against his will and/or used a deadly weapon (his automobile) to batter Nugent."  (Ex. M, p. 48).  Mr. Farmer's supporting facts in his motion and petition are identical to facts used to support other claims and need not be restated here.

Mr. Farmer claims that had his counsel made reasoned arguments in a motion for judgment of acquittal at the appropriate times, the state would not have been able to support its charge with competent substantial evidence.  Thus, counsel would succeed on the motion and Mr. Farmer would not have been convicted on the aggravated battery charge.  (Doc. 1, p. 4P).  Therefore, his counsel's performance denied Mr. Farmer due process of law by being convicted of a charge of which there was insufficient evidence (ex. M, p. 52).

### State Court Decision

The Rule 3.850 court construed this ground of Mr. Farmer's motion as claiming his counsel failed to move for judgment of acquittal on *any* charge (ex. Q, p. 80).  After affirming that trial counsel moved for judgment of acquittal on the

charge of attempted second degree murder and succeeded, it cursorily notes that "[t]rial counsel also argued the (JOA) on the remaining three counts."  (Ex. Q, p. 80).

### Federal Review of State Court Decision

Respondent concedes the Rule 3.850 court failed to address this claim on the merits (doc. 36, p. 69).  Accordingly, the undersigned addresses Mr. Farmer's claim *de novo*.  *See Cone*, 129 S. Ct. at 1784.  Respondent also asserts this claim is partially unexhausted because Mr. Farmer raises additional legal bases in his habeas petition he did not raise in his motion for post-conviction relief (doc. 36, pp. 68-69).  Specifically, Mr. Farmer's habeas petition for the first time alleges the State did not put forth sufficient evidence that Mr. Farmer knew Major Nugent was a law enforcement officer and that Major Nugent was engaged in the lawful performance of his duties (doc. 1, p. 4P).  Respondent is correct.

To satisfy the exhaustion requirement, the petitioner must raise the same claims in state court he raises in federal court.  *Picard*, 404 U.S. at 276, 92 S. Ct. at 513.  Not only must the claims be the same, but the petitioner "must have presented the state court with [the] particular legal basis for relief in addition to the facts supporting it."  *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1350 (11th Cir. 2004).  Mr. Farmer's failure to argue to the state court that his counsel was ineffective for failing to move for judgment of acquittal when the State had insufficient evidence to establish he knew Major Nugent and that Major Nugent was engaged in the lawful performance of his duties renders these legal bases unexhausted.[26]  Now, any further attempt at exhaustion in Florida courts would be futile because his claim would be untimely and procedurally barred under Florida law.  Fla. R. Crim. P. 3.850(f); *see Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Mr. Farmer does not claim actual innocence or newly discovered evidence so as to excuse the default.

---

[26]  Mr. Farmer also incorporates Ground One (B) of his petition, alleging the charging information was deficient (doc. 1, p. 4p).  This argument is also unexhausted, and the undersigned previously found Mr. Farmer's Ground One (B) is without merit.

The undersigned further finds that Mr. Farmer's exhausted bases for claiming ineffective assistance of counsel for failing to move for a judgment of acquittal on the aggravated battery charge are without merit.  To reach the question of Mr. Dingus' potential ineffectiveness, the court must address the underlying constitutional due process claim of insufficiency of the evidence.  When a petitioner seeks relief on this claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). The jury has the discretion and responsibility to weight evidence, resolve conflicting testimony, and draw reasonable inferences from the facts.  *Id.*

Under this standard, the undersigned concludes a rational trier of fact could find the record evidence supports a guilty verdict based on the essential elements of actual and intentional touch or strike and committing the battery by using a deadly weapon. Mr. Farmer contends Major Nugent's own testimony proves Mr. Farmer did not touch or strike Major Nugent (ex. M, p. 48).  However, Mr. Farmer's selection of three responses confirming that Mr. Farmer did not use his fists or feet to beat Major Nugent is hardly representative of the entire trial record.  He further asserts Major Nugent voluntarily attached himself to Mr. Farmer's vehicle (doc. 1, p. 4P; doc. 15, ex. M, pp. 47-48).  But hitting someone with a body part is not the only way to commit battery.

In *Clark v. State of Florida*, 783 So.2d 967 (Fla. 2001), the court considered whether the defendant's striking an occupied vehicle with his vehicle could constitute a battery.  783 So.2d at 969.  In finding that it did, it stated that "the circumstances of the case will determine whether a vehicle is sufficiently closely connected to a person so that the striking of the vehicle would constitute a battery on the person.  Thus, this is generally a question of fact for the jury." *Id.* While this and related cases deal with defendants using a vehicle to batter another person *in*

*a vehicle*, the courts accept without mention that the defendant's vehicle can be the means of committing the battery.  *See Clark, supra*; *Wingfield v. State of Florida*, 799 So.2d 1022 (Fla. 2001) (remanding to court of appeals to determine if vehicle contact with occupied police cruiser had requisite connection to constitute aggravated battery).  Therefore, Mr. Farmer's argument that he did not touch or strike Mr. Nugent because he did not use his body fails under Florida law, and the undersigned cannot conclude that no rational trier of fact could find that his car was sufficiently connected to Major Nugent so as to find Mr. Farmer guilty of aggravated battery on a law enforcement officer.

Furthermore, a vehicle is a deadly weapon under Florida law when it is used in a way that is likely to cause death or great bodily harm.  *Nguyen v. State of Florida*, 858 So.2d 1259, 1260 (Fla. 1st DCA 2003) (quoting *D.C. v. State of Florida*, 567 So.2d 998, 1000 (Fla. 1st DCA 1990).  At trial, the State introduced as an exhibit the shoes Major Nugent was wearing the day he pursued Mr. Farmer (ex. B, p. 63).  He testified that prior to the incident, his shoes were in normal condition.  As a result of his legs dragging from the car, the leather cover of the tops of the shoes were worn down (ex. B, p. 64).  *See Malczewski v. State of Florida*, 444 So.2d 1096, 1099 (Fla. 2nd DCA 1984) (holding the word "person" under battery statute includes anything intimately connected with the person); *see also Williamson v. State of Florida*, 510 So.2d 335, 338 (Fla. 4th DCA 1987) (clothing can be regarded as a part or extension of the person), *disapproved on other grounds in Clark v. State of Florida*, 783 So.2d 967 (Fla. 2001) *and State of Florida v. Sanborn*, 533 So.2d 1169 (Fla. 1988). He also sustained injuries to his legs when he was released from the car (ex. B, p. 67).  As a matter of common sense, being dragged from a car, even at a low rate of speed, is likely to cause great bodily harm.

Because a rational trier of fact could find that Mr. Farmer touched or struck Major Nugent and used a deadly weapon, the State did present sufficient evidence of the elements, and a motion for judgment of acquittal would have failed.  Mr.

Dingus cannot be ineffective for failing to make a meritless motion. *Freeman v. Att'y Gen'l, Florida,* 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . .").

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," and it was not based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2); *Williams, supra.* Mr. Farmer is not entitled to federal habeas relief on this claim, and the writ should not issue.

## Ground Two - Ineffective Assistance of Appellate Counsel.

### (A)    Failure to appeal fundamental error on jury instruction.

For his first ground based on ineffective assistance of appellate counsel, Mr.Farmer contends that fundamental error occurred when the trial court instructed the jury on the forcible felony exception to self-defense.[27] He re-raises the argument that Major Nugent was not executing a lawful duty at the time the alleged offenses occurred. Trial counsel did not object to the instruction (ex. B, pp. 197-202, 263-265, 276), so it was not preserved for appeal. *Archer v. State*, 673 So.2d 17 (Fla. 1996). Thus, the only way for appellate counsel to challenge the instruction would have been to show fundamental error. Appellate counsel did not raise this issue on appeal. Mr. Farmer contends that the court's forcible felony jury instruction was fundamental error because he was charged with two acts and claims self-defense to each act (ex. W, p. 6). He also argues appellate counsel's failure to raise the issue "has allowed the state to impermissively [sic] shift the burden to the defense to establish that the Petitioner did non know that Officer Nugent was a police officer acting in his official capacity." (Ex. W, p. 7). The "burden-shifting" negated his theory of self-defense.

---

[27] Mr. Farmer's arguments in his federal habeas petition are restatements of his state habeas petition (*see* doc. 1, pp. 4R-T).

**State Court Decision**

Mr. Farmer raised this claim in the petition for writ of habeas corpus in Ground (A) (ex. W) The state habeas court denied the petition on the merits, without providing its analysis of the claim or stating its reasons for denial (ex. X).

**Federal Review of State Court Decision**

The standard for establishing ineffective assistance of trial counsel is set forth in *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S. Ct. 746, 764, 145 L. Ed. 2d 756 (2000). It is similar to the *Strickland* standard applied to trial counsel in that the petitioner must show appellate counsel was objectively unreasonable in failing to file a brief addressing nonfrivolous claims, and absent appellate counsel's error there is a reasonable probability that the petitioner would have prevailed on his appeal. *Id.* The issue raised in this ground involves a jury instruction that is appropriate under Florida law when self-defense is raised. Chapter 776, Florida Statutes, provides generally that a person is entitled to use force to defend himself. Fla. Stat. § 776.041 provides exceptions, however. The foregoing justification for the use of force "is not available to a person who: (1) Is attempting to commit, committing, or escaping after the commission of, a forcible felony . . .." Also, a person is not justified in using force to resist arrest by a person who is known, or reasonably appears, to be a law enforcement officer. Fla. Stat. § 776.051.

The trial court gave the following instructions to the jury, without objection:

And [sic] issue in this case is whether the Defendant acted in self-defense. It is a defense to the offenses with which the Defendant, Wellington Farmer, is charged, if the injury to Joe Nugent resulted from the justifiable use of force likely to cause death or great bodily harm.

The use of force likely to cause death and great bodily harm is justifiable only if the Defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting any attempt to commit a burglary of a conveyance upon him.

> **Burglary of a conveyance is entering a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the Defendant is licensed or invited to enter.**
>
> **However, the use of force likely to cause death or great boldly harm is not justifiable if you find that Defendant, Wellington Farmer, was attempting to commit, committing, or escaping after the commission of aggravated battery on a law enforcement officer or resisting arrest with violence.**

(Ex. B, pp. 263-264).  Mr. Farmer contends that giving these instructions was error, and that appellate counsel was ineffective for failing to raise the issue on direct appeal because the error was fundamental in that it robbed him of the use of his defense (self-defense), and fundamental error is capable of review regardless of a record of contemporaneous objection.  Mr. Farmer's contention that the state court unreasonably applied *Strickland* obviously depends upon this court determining that appellate counsel's performance was deficient.  But first this court would have to conclude that the state court misinterpreted state law when it effectively held that there was no fundamental error under state law.

The Eleventh Circuit has held that "[u]nder Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument."  *Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) (citing *Card v. State*, 497 So.2d 1169, 1174, 1177 (Fla. 1986)).  Mr. Farmer attempts to avoid this reasoning by arguing that the appellate court would have heard the issue because it constituted fundamental error.  *See Archer v. State of Florida*, 673 So.2d 17 (Fla. 1996).  Mr. Farmer's interpretation of Florida law is incorrect.

A forcible felony jury instruction is proper when the defendant "is charged with at least two criminal acts, the act for which the accused is claiming self-defense and a separate forcible felony."  *Barnes v. State of Florida*, 868 So.2d 606, 607 (Fla. 1st DCA 2004).  Florida courts have held that where the defendant is charged with one forcible felony and his sole defense is self-defense, it is fundamental error for

the trial judge to give the forcible felony exception to self-defense instruction.  *See Williams v. State of Florida*, 937 So.2d 771, 774 (Fla. 1st DCA 2006). In support of his argument that fundamental error occurred, Mr. Farmer cites *Barnes v. State*, 868 So.2d 606 (Fla. 1st DCA 2004).  In that case, the court reversed a conviction in which *only one* forcible felony was charged.  Mr. Farmer was charged with more than one forcible felony:  aggravated battery on a law enforcement officer, and resisting a law enforcement officer with violence.  Mr. Farmer argues that these are the same crime because they arose out of the same event, but that argument is misplaced.  Each crime requires an element the other does not, so they are not the same crime regardless of the singular event.  Furthermore, self-defense was not Mr. Farmer's sole defense.  He also argued he was not guilty by negating an essential element of the crime:  Major Nugent was not engaged in the lawful execution of a legal duty so he had no lawful reason to detain Mr. Farmer.[28]

In denying Mr. Farmer's state habeas petition the state court could have reasonably concluded that under Florida law, trial counsel's failure to object was not fundamental error, so appellate counsel's failure to raise a meritless issue is not ineffective.  *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)), *cert. denied*, 531 U.S. 1131, 121 S. Ct. 892, 148 L. Ed. 2d 799 (2001).  The state court has answered the question of what would have happened had Mr. Farmer's appellate counsel raised the issue on appeal.  She would have failed.  Therefore, counsel cannot be faulted for having failed to raise it.  And because counsel would have failed had she acted as Mr. Farmer demands, he cannot show prejudice.

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*.  Mr. Farmer is not entitled to federal habeas relief, and the writ should not issue.

---

[28]  The state court rejected this argument on direct appeal.  (*See* ex. H, pp. 26-30).

**(B)      Failure to appeal dismissal of African American jurors.**

Mr. Farmer next contends that his appellate counsel was ineffective in not appealing the court's adverse ruling on trial counsel's objection when the state challenged the only remaining African American on the venire.

**State Court Decision**

Mr. Farmer presented this claim to the appellate court in his petition for writ of habeas corpus as Ground (B), which the First DCA denied "on the merits." (Exs. W, X).

**Federal Review of State Court Decision**

Respondent contends that appellate counsel was not deficient because she could not raise the issue on appeal due to trial counsel's failure to preserve the objection.  The record contradicts respondent's contention.  During jury selection the state used a peremptory challenge against Ms. Fennell, the only remaining black person on the jury. When the defense asked for a race-neutral explanation, counsel stated that Ms. Fennell knew the defendant on a first name basis.  The defense disagreed, stating that Ms. Fennell had said only that she knew the defendant in the community.  The court then asked the reporter to read back portions of the earlier voir dire, after which the court allowed the strike (ex. BB, pp. 39-40). The transcript does not identify what portion of the voir dire was read back, but logically it included Ms. Fennell's response to a question by the court on whether she knew either of the attorneys or the defendant.  She answered "Well, I know Wellington by being in the community."  The court said it would "grant that pre-emptory [sic] challenge." (*Id.* at 41).  By using Mr. Farmer's first name it was clear that Ms. Fennell knew the defendant well enough to cause concern on the part of the state.  The parties argued over the degree of her familiarity with Mr. Farmer, but the court ultimately allowed the strike.

After the court allowed the peremptory challenge, Mr. Dingus stated:  "I just want to make a record that I disagree with your decision on that."  (Ex. BB, p. 41).

The court responded: "Your objection is noted."  After the attorneys struck several more jurors through peremptory challenges, the court stated:

> So we have Ms. Price, Mr. Palmer, Ms. Marray, Ms. McLemore, Mr. Thomas, Ms. Minger and Ms. Kelly.  Mr. Farmer, *with the previous objections from your attorney*, are you satisfied with the selection of this jury?

(Ex. BB, pp. 41-42).  Mr. Farmer responded affirmatively, and the court impaneled the jury (ex. BB, p. 42).  The record shows Mr. Farmer preserved the issue for appeal.[29]

As stated in Ground 2 (A), the habeas court applies the standard for set forth in *Smith, supra*, in evaluating claims of ineffective assistance of appellate counsel.  This court must defer to a state court ruling on the merits as long as the decision did not unreasonably apply established Supreme Court precedent, or arrive at a decision based on an unreasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(2); § 2254(e)(1); *Callahan v. Campbell*, 427 F.3d 897, 926 (11th Cir. 2005) ("Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence."); *see also Rutherford v. Crosby*, 385 F.3d 1300, 1308 (11th Cir. 2004) (the factual finding must be unreasonable in light of the evidence in the state court record).  The record supports the First DCA's ultimate conclusion.

---

[29] In this court's first Report and Recommendation, the court found that defense counsel failed to renew his objection.  The court based its finding on *Franqui v. State of Florida*, 699 So.2d 1332, 1334 (Fla. 1997) and *Joiner v. State of Florida*, 618 So.2d 174, 176 (Fla. 1993).  Upon further review, the undersigned finds these cases are distinguishable from the facts here and are not controlling.  In *Franqui*, the court found defense counsel failed to preserve his objection because "he stated he accepted the jury panel 'subject to our previous objection,' but then allowed the trial court to define his objection as limited to jurors 'Diaz, Andani and Weaver."  699 So.2d at 1334 n.3.  In fact, counsel had objected to another juror and did not correct the court regarding the extent of his objection.  *Id.*  In *Joiner*, defense counsel accepted the jury without objection immediately before it was sworn.  The court specifically stated: "Had Joiner renewed his objection or accepted the jury subject to his earlier *Neil* objection, we would rule otherwise."  619 So.2d at 176.  The court in Mr. Farmer's case not only noted for the record Mr. Dingus' contemporaneous objection, but asked Mr. Farmer if he accepted the jury "with the previous objections for your attorney. . . ."  Clearly, the court  recognized that Mr. Dingus had not abandoned his objections.

Mr. Dingus asserted a *Batson* claim, and the court held a short hearing.[30]  The State asserted race-neutral reasons for challenging Ms. Lewis and Ms. Fennell.  It showed that Ms. Lewis was married to a defense witness, and Ms. Fennell knew Mr. Farmer well enough to address him by his first name (ex. BB, pp. 38, 40).  The trial court accepted these justifications.  It is not unreasonable to conclude that the First DCA, applying the *Smith* standard, determined Mr. Farmer could not show prejudice in that he had a reasonable probability of succeeding on this issue on appeal.

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*.  Mr. Farmer is not entitled to federal habeas relief on this claim, and the writ should not issue.


## Ground Three - Trial Court Error.

### (A)   Failure to grant motion for judgment of acquittal where no proof that law enforcement officer was engaged in the execution of a legal duty.

Mr. Farmer's Issue II. of his direct appeal argued trial court error in denying counsel's motions for judgment of acquittal on the charges of aggravated battery on a law enforcement officer and resisting arrest with violence (ex. H, pp. 26-30).  Mr. Farmer reiterates the arguments raised in Ground One (A)A above alleging Major Nugent lacked reasonable suspicion because  Mr. Harrell was a "tipster" of unproven veracity and, as a convicted felon, inherently unreliable (doc. 1, pp. 5A-B, doc. 15, ex. H, pp. 28-29).  He further contends that when Major Nugent arrived there was no criminal activity afoot (ex. H, p. 29).  Therefore, there was no proof to support the jury's finding that Major Nugent was engaged in discharging a legal duty, an essential element of the crime charged (ex. H, p. 30).

Mr. Farmer's trial counsel moved for judgment of acquittal, arguing that Major Nugent "made the decision to do acts to detain [Mr. Farmer] based on an

---

[30]  *See supra* note 23 (describing the procedure for raising and testing whether a peremptory challenge is based on racial discrimination).

uncorroborated hunch[,]" in violation of *Terry v. Ohio* (Ex. B, p. 131).[31]  He argued Major Nugent did not have enough information to support a "Terry stop," and at the point Major Nugent "darted after" Mr. Farmer, he was not free to leave (ex. B, pp. 131-132).  Hence, Major Nugent was not acting with any legal authority and Mr. Farmer was entitled to judgment of acquittal on the charges of aggravated battery on a law enforcement officer and resisting arrest with violence.

### State Court Decision

Mr. Farmer presented this claim to the appellate court as Issue II. of his direct appeal (ex. H, p. 26).  The First DCA affirmed per curiam Mr. Farmer's conviction and sentence without a written opinion on April 18, 2005 (ex. K).

### Federal Review of State Court Decision

Due process requires a state to prove each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787, 61 L. Ed. 2d 560 (1979).  When a federal court examines the sufficiency of the evidence on review, the role of the court is not to reweigh the evidence or to determine whether the evidence established guilt beyond a reasonable doubt.  *Id.* at 319.  The proper inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, the federal court believes that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.*  Where there are conflicting inferences and disputes exist, this court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution.  *Martin v. State of Alabama*, 730 F.2d 721, 724 (11th Cir. 1984).

"It is not required that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt[,]" and "[t]he simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief."  *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987); *accord, Carter v.*

---

[31] The *Terry* standard governs temporary detentions for investigatory purposes, which must be based on a reasonable suspicion of illegal activity.  See *supra* note 10 for a full explanation of the *Terry* standard.

*Montgomery*, 769 F.2d 1537, 1542 (11th Cir. 1985) (it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt).

Under Florida law, when Mr. Farmer's counsel moved for judgment of acquittal he admitted to all the facts set out in the Background section of this Report and Recommendation, as well as every reasonable inference favorable to the prosecution that the jury might draw from the admitted evidence. *Lynch v. State of Florida*, 293 So.2d 44 (Fla. 1974); *McHolder v. State of Florida*, 917 So.2d 1043, 1046 (Fla. 5th DCA 2006) . The evidence included the following: Major Nugent had known Mr. Farmer for many years on a first name basis; an informant said he was approached by Mr. Farmer for a possible drug deal; the informant told law enforcement without an offer of a reward or deal; Mr. Farmer arrived at the informant's house for the drug deal over an hour after the appointed time; when Major Nugent drove up Mr. Farmer's eyes got big, he had a panicky look on his face, and he ran toward his car; Major Nugent told him not to run but he did run; Mr. Farmer got in his car and drove off at a high rate of speed with Capt. Nugent hanging on. (Ex. B, pp. 34, 35-36, 42-43,55-56, 59, 60, 100).

This court does not go so far as to conclude Major Nugent was engaged in the lawful execution of a duty under *Terry*, but that is not its duty. In fact, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence. *Young v. Kemp*, 760 F.2d 1097 1105 (11th Cir. 1985). The question before this court is whether the First DCA's ultimate conclusion that the trial court did not commit error by denying the motions for judgment of acquittal was based on an unreasonable application of the holding in *Jackson,* based on the *Terry* and *Wardlow* standards, or an unreasonable determination of the facts in light of the evidence. The trial court found, and the First DCA affirmed, that a rational trier of fact could have found beyond a reasonable doubt that Major Nugent was engaged in discharging a legal duty. Even though the

record supports conflicting inferences, the state court's decision is reasonable because a rational juror could have found the elements of the crimes charged beyond a reasonable doubt. *Martin*, 730 F.2d at 724. The jury was instructed that in order to find Mr. Farmer guilty on these two counts they had to find that Major Nugent was engaged in the lawful performance of his duties (ex. B, pp. 256-257, 262). By its verdict, the jury resolved any conflicts in favor of the prosecution.

Therefore, the state court's denial of relief on this claim did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*. Mr. Farmer is not entitled to federal habeas relief, and the writ should not issue.

### (B) Failure to grant motion for judgment of acquittal on the fleeing or attempting to elude count.

Mr. Farmer's final ground for relief addresses Count 2 - fleeing or attempting to elude a law enforcement officer. In his habeas petition, Mr. Farmer states that Major Nugent made "unidentified aggressive movements" toward him that cause him to fear for his safety. Because his actions were a product of his "heightened/frightened state of mind," he did not have the specific intent to flee. He states: "If the aggressive and unlawful actions of Officer Nugent provided a well-founded fear in the Petitioner then [sic] any further incidents evolving from Nugent's unlawful execution of his duty are a nullity due to Petitioner's heightened state of mind." Mr. Farmer concedes he did not offer this "particular arguement" to the state courts. (Doc. 1, p. 5C).

He goes on to restate the ground as raised in his direct appeal. There, he argued that when the chase began, the marked police car was behind an unmarked police car, so he was not being pursued by a car with marked insignia (ex. H, pp. 37-38). By the time the marked car was directly pursuing him, he was not traveling at a high rate of speed (ex. H, p. 38). He also argued "[t]here was no evidence that once Nugent left the vehicle that Appellant was acting in a manner exhibiting a wanton

disregard for personal or property." (Ex. H, p. 39). Taken together, Mr. Farmer concludes that there was insufficient evidence to show the elements of fleeing or attempting to elude as charged.[32]

### State Court Decision

Mr. Farmer raised this as Issue IV. on direct appeal (ex. H.). The appellate court affirmed petitioner's conviction without opinion (ex. K).

### Federal Review of State Court Decision

The clearly established Federal law with regard to a claim of insufficient evidence to support a conviction is outlined in Ground Three (A). This claim can be addressed briefly. In his petition Mr. Farmer says he did not know that Major Nugent was a law enforcement officer, that the officer's sudden appearance and rapid approach made him fearful,[33] that he reasonably got in his car to get away from a person who he thought was attacking him, that there were no marked law enforcement vehicles with lights and sirens on, and that he did not drive at a high rate of speed or in a wanton manner. However, he also says that "[w]hile at trial there was testimony to the contrary, a totality of the circumstances, as mentioned, must be considered." (Doc. 1, p. 5D).

As noted earlier, by moving for judgment of acquittal, Mr. Farmer admitted all the facts and reasonable inferences favorable to the prosecution outlined above. The "totality of the circumstances" is irrelevant. Mr. Farmer essentially argues that at no single point in time during the criminal episode could the state prove every element of the crime (doc. 1, p. 5D). At some point he was driving at a high rate of speed but was not being pursued by a car with lights, sirens, and insignia. At another point he was being pursued by a car with lights, sirens, and insignia, but he

---

[32] Mr. Farmer concedes, and trial counsel argued in his motion for judgment of acquittal, that there may be sufficient evidence to support a third degree felony conviction for fleeing or attempting to elude under Section 316.1935(2), Florida Statutes (ex. H, p. 39).

[33] The "fear" part of this argument was not presented to the appellate court for review and is not exhausted. Even if it had been presented, it is without merit as explained below.

was not driving at a high rate of speed or exhibiting wanton disregard for Major Nugent's safety.  The state court was not persuaded by Mr. Farmer's interpretation of Florida law, and this court defers to the state court's reasonable interpretation of state law.  There was sufficient evidence for the case to go to the jury, and the jury found Mr. Farmer guilty beyond a reasonable doubt.

The state court's adjudication of this claim did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*.  Mr. Farmer is not entitled to federal habeas relief, and the writ should not issue.

## CONCLUSION

The court has carefully reviewed the trial transcript, the records of proceedings on Mr. Farmer's motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850, and all submissions in this proceeding.  Mr. Farmer's grounds alleging ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and trial court error, including sub-claims, do not warrant federal habeas relief, and the writ should not issue.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a), Rules Governing Section 2254 Cases. A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595,

1603-04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.      That the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Wellington Farmer* in the Circuit Court of Gulf County, Florida, case no. 02-172, be DENIED and the clerk be directed to close the file.

2.      That a certificate of appealability be DENIED.

At Pensacola, Florida, this 18th day of July, 2011.

/s/ *Miles Davis*

**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties</u>.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**